IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1040

Filed: 18 April 2017

Cabarrus County, Nos. 13 JT 121–24

IN THE MATTER OF: A.B., C.B., J.B., A.B.

Appeal by respondent mother from order entered 5 July 2016 by Judge Christy E. Wilhelm in Cabarrus County District Court. Heard in the Court of Appeals 3 April 2017.

*Stephen A. Moore and H. Jay White for petitioner-appellee Cabarrus County Department of Human Services.*

*Mark L. Hayes for respondent-appellant.*

*Brandon J. Huffman for guardian ad litem.*

BRYANT, Judge.

Where the trial court's findings and conclusions do not adequately account for respondent-mother's circumstances at the time of the termination hearing, as required to support a termination of her parental rights under N.C.G.S. § 7B-1111(a)(1) or (2), we vacate and remand.

On 22 October 2013, the Cabarrus County Department of Human Services ("CCDHS") obtained non-secure custody of the respondent-mother's[1] minor children

---

[1] Respondent-father is not a party to this appeal.

A.B. (born October 2001), C.B. (born August 2006), J.B. (born March 2010), and A.B. (born November 2012) (collectively, "the children"). CCDHS filed petitions[2] alleging that they were neglected "due to ongoing substance abuse and domestic violence" by respondent-mother and respondent-father (collectively, "respondents"), which "place[d] their four young children at risk of harm" and created an environment injurious to their welfare. The petition described CCDHS's unsuccessful efforts to provide treatment services to respondents and implement a safety resource plan after substantiating reports of neglect and physical abuse, which reports included respondent-father's inappropriate physical discipline of respondents' two oldest daughters, who were then six and eleven years of age. The initial child protective services report was received on 25 February 2013.

The trial court held a hearing on CCDHS's petitions on 13 March 2014 and adjudicated the children to be neglected and dependent juveniles. It maintained the children in CCDHS custody and directed that they remain in their current placements. In its disposition, the court identified "substance abuse, improper supervision, injurious environment and domestic violence involving the parents" as the "issues which led to [the children's] placement" outside the home. It found that

---

[2] We note that the record on appeal contains only the petition and non-secure custody order filed with regard to the youngest child, A.B, in case number 13 JA 124, but includes the summonses issued and returned in all four cases.

"[t]he following community-level services [were] needed to strengthen the home situation and to remediate or remedy the issues which led to placement:

      a.  Psychological Evaluation
      b.  Drug/Alcohol Screens
      c.  Mental Health Treatment
      d.  Medication Management
      e.  Parenting Education
      f.  Suitable [H]ousing[.]"

The trial court imposed separate case plans for each respondent to address these concerns. Respondent-mother was ordered to obtain a new substance abuse evaluation through Genesis and follow any recommendations; submit to random drug screens as requested by CCDHS; comply with the recommendations of her parenting capacity evaluation by Dr. Susan Hurt; complete a court-approved parenting course and demonstrate skills learned in the course during visitation; comply with her visitation plan; attend the children's medical, dental, and school appointments; maintain bi-weekly contact with her CCDHS social worker, reporting any changes in address, employment, or other significant events; sign releases allowing CCDHS to obtain information from service providers; "maintain her own suitable housing, including utilities, appropriate for the placement of all the children" for at least six months; and maintain employment allowing her to provide financially for her children for a continuous four- to six-month period. The court established reunification as the permanent plan.

The trial court ceased reunification efforts as to respondent-father in June 2015 and instituted concurrent permanent plans of reunification with respondent-mother only and adoption. At a subsequent review hearing on 13 August 2015, the court relieved CCDHS of further reunification efforts as to respondent-mother and changed the permanent plan to adoption with a secondary plan of legal guardianship.

CCDHS filed a motion to terminate respondents' parental rights on 28 October 2015. After hearing evidence on 12 and 31 May 2016, the trial court concluded that respondent-mother's parental rights were subject to termination for (1) neglect, and (2) willful failure to make reasonable progress to correct the conditions that led to the children's removal from the home over three years earlier. N.C. Gen. Stat. § 7B-1111(a)(1)–(2) (2015). The court further determined that terminating respondent-mother's parental rights was in the best interests of the children. Respondent-mother filed timely notice of appeal from the termination order.

───────────────────────────────

On appeal, respondent-mother claims the trial court's findings of fact do not support its adjudication of grounds to terminate her parental rights under either N.C. Gen. Stat. § 7B-1111(a)(1) or (2). She contends the court found no facts tending to show that, at the time of the May 2016 termination hearing, she had failed to resolve the issues of substance abuse and domestic violence which led to the children's removal from her home and adjudication as neglected juveniles. As those issues were

the only factors cited by CCDHS at the time of the initial removal and adjudication, respondent-mother argues that the court could not find a likelihood of a repetition of neglect if the children were returned to her care, *see* N.C.G.S. § 7B-1111(a)(1), or that she willfully failed to make reasonable progress to correct the conditions leading to the children's placement in foster care, *see id.* § 7B-1111(a)(2). For the following reasons, we agree.

We review an adjudication under N.C. Gen. Stat. § 7B-1111(a)(1) or (a)(2) to determine (1) whether the court's findings of fact are supported by clear, cogent, and convincing evidence, and (2) whether its findings in turn support its conclusions of law. *In re Shepard*, 162 N.C. App. 215, 221–22, 591 S.E.2d 1, 6 (2004) (citing *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984)). Uncontested findings are deemed to be supported by the evidence for purposes of our review. *See In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007). "[E]rroneous findings unnecessary to the determination do not constitute reversible error" where an adjudication is supported by sufficient additional findings grounded in competent evidence. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (citation omitted). The adjudication of any single ground under N.C. Gen. Stat. § 7B-1111(a) will support an order terminating parental rights. *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) (citation omitted).

The trial court found grounds to terminate respondent-mother's parental rights for neglecting the children under N.C. Gen. Stat. § 7B-1111(a)(1). Where a child has been in a placement outside the home for a significant period of time, an adjudication under N.C.G.S. § 7B-1111(a)(1) may be supported by "evidence of prior neglect and [of] the probability of a repetition of neglect" if the child were returned to the parent's care. *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). "The trial court must . . . consider any evidence of changed conditions" since the prior adjudication of neglect and "make an independent determination of whether neglect authorizing termination of the respondent's parental rights existed at the time of the termination hearing." *Id.* at 715–16, 319 S.E.2d at 232–33 (emphasis added); *accord In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) ("Termination of parental rights for neglect may not be based solely on past conditions which no longer exist." (citation omitted)). As our Supreme Court has emphasized, "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Ballard*, 311 N.C. at 715, 319 S.E.2d at 232.

The trial court also adjudicated grounds to terminate respondent-mother's parental rights under N.C.G.S. § 7B-1111(a)(2), which allows termination where "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that

reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). A finding that the parent acted "willfully" under N.C.G.S. § 7B-1111(a)(2) "does not require a finding of fault by the parent." *In re B.S.D.S.*, 163 N.C. App. 540, 545, 594 S.E.2d 89, 93 (2004) (citation omitted). "Willfulness may be found where a parent has made some attempt to regain custody of the child but has failed to exhibit 'reasonable progress or a positive response toward the diligent efforts of DSS.' " *Id.* (quoting *In re Oghenekevebe*, 123 N.C. App. 434, 440, 473 S.E.2d 393, 398 (1996)). Moreover, though "[a] parent's failure to fully satisfy all elements of the case plan goals is not the equivalent of a lack of 'reasonable progress,' " *In re J.S.L.*, 177 N.C. App. 151, 163, 628 S.E.2d 387, 394 (2006) (citation omitted), a parent's "prolonged inability to improve her situation, despite some efforts in that direction, will support" an adjudication under N.C.G.S. § 7B-1111(a)(2). *In re B.S.D.S.*, 163 N.C. App. at 546, 594 S.E.2d at 93.

As with an adjudication of neglect under N.C.G.S. § 7B-1111(a)(1), "the nature and extent of the parent's reasonable progress" must be "evaluated for *the duration leading up to the hearing on the motion or petition to terminate parental rights*." *In re A.C.F.*, 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006) (second emphasis added) (citing *In re O.C. & O.B.*, 171 N.C. App. 457, 466–67, 615 S.E.2d 391, 396 (2005)).

## I. Preliminary Issue

Initially, we must address respondent-mother's argument that the trial court failed to enter affirmative findings of fact with regard to her conduct during the course of this case. Respondent-mother contends that the court's findings simply state what the court itself found at prior hearings. However, we read the court's findings as summarizing respondent-mother's progress—or lack thereof—at various points in these proceedings. Finding of Fact No. 23 is representative of the order's format:

> 23. At the Review Hearing on May 8, 2014, [respondent-mother was] present in the courtroom and represented by counsel. . . . *The mother's progress was as follows*:
>
> a. Mother continues to reside at 224 Evans St. Concord, NC. This is the same home that the children resided in prior to coming into CCDHS custody.
>
> b. Mother has not provided any information as to relative placement for her children during this reporting period.
>
> c. Mother has not provided CCDHS with verification of income.

(Emphasis added).

The trial court did not find merely that certain findings of fact were made at the prior hearings in this cause. Rather, as shown in Finding of Fact No. 23, the court made specific findings with regard to respondent-mother's progress as of the date of

each prior hearing.[3]  As respondent-mother does not contest the evidentiary support for these findings, they are binding on appeal.  *In re H.S.F.*, 182 N.C. App. at 742, 645 S.E.2d at 384 (citation omitted).  Moreover, the fact that the court may have copied findings from its prior orders is "irrelevant," absent a claim that the findings are not supported by the evidence presented at the termination hearing.  *In re J.W.*, ___ N.C. App. ___, ___, 772 S.E.2d 249, 253 (2015) ("The purpose of trial court orders is to do justice, not foster creative writing.").

## II.  Insufficient Findings of Fact

Respondent-mother claims that the findings of fact in the termination order are insufficient to support an adjudication under either N.C.G.S. § 7B-1111(a)(1) or (2).  Specifically, she points to an absence of findings with regard to either the "fitness of [respondent-mother] to care for the child[ren]," or "the nature and extent of [respondent-mother's] reasonable progress" *"at the time of the termination proceeding."*  *See Ballard*, 311 N.C. at 715, 319 S.E.2d at 232 ("The determinative

---

[3] It is also true that the termination order refers to many of the trial court's prior findings in the cause.  Finding of Fact No. 23, for example, states that "[a]t the Review hearing on May 8, 2014, . . . [*t*]*he Court found* that while the mother and father made progress . . ., the progress made is insufficient for the court to be assured that the juveniles could safely return to either mother or father's care." (Emphasis added).  This type of procedural history is not necessarily out of place in an order terminating parental rights, particularly where a case has been pending for almost three years at the time of the termination hearing.  However, we do not rely on the trial court's account of its own earlier findings when assessing the reasonableness of respondent-mother's progress under N.C.G.S. § 7B-1111(a)(2).  *Cf. generally In re O.W.*, 164 N.C. App. 699, 703, 596 S.E.2d 851, 854 (2004) (explaining that a recitation of what a witness testified "is not even really a finding of fact"); *cf. also In re T.M.*, 180 N.C. App. at 547, 638 S.E.2d at 240–41 (allowing appellate court to disregard erroneous findings unnecessary to the trial court's adjudication).

factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*"); *A.C.F.*, 176 N.C. App. at 528, 626 S.E.2d at 735 (noting that a parent's reasonable progress "is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights" (citation omitted)). We agree. Although the termination hearing was held more than three months after the 11 February 2016 review hearing, the court made no findings regarding respondent-mother's conduct or circumstances at any time subsequent to the 11 February 2016 hearing date.

We recognize that the trial court's ultimate findings with regard to the grounds for termination purport to describe present conditions:

> 46. The Court finds that the following grounds for termination exist to terminate the parental rights of mother and father pursuant to NC Gen Stat. §7B-1111(1) [sic]; that mother and father neglected the juveniles . . . and that *there is a likelihood* that such neglect would continue in the future; pursuant to NC Gen Stat. §7B-1111(a)(2), mother and father willfully left the juveniles in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances *have [sic] been made* in correcting those conditions which led to the removal of the juveniles from the custody and care of the parents . . . .

(Emphasis added). However, such ultimate findings must arise "by processes of logical reasoning from the evidentiary facts" found by the court. *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation omitted); *see also In re D.M.O.*, ___ N.C. App. ___, ___, 794 S.E.2d 858, 861 (2016) ("[A] trial court must make

adequate evidentiary findings to support its ultimate finding of willful intent." (citation omitted)). Here, the evidentiary facts found and recited by the court are inadequate to support these ultimate facts.

Our review of the transcript reveals that CCDHS social worker Cynthia Bowers and respondent-mother presented testimony that would support additional findings up to the time of the termination hearing. We further believe "there are material conflicts in the evidence relating to the issue of respondent-mother's willfulness" and the reasonableness of her progress "that were not resolved by the trial court's order." *In re D.M.O.*, ___ N.C. App. at ___, 794 S.E.2d at 865–66 (vacating and remanding where the trial court's findings were "inadequate or fail[ed] to resolve conflicts in the evidence material to a conclusion that respondent-mother abandoned" the juvenile). Similarly, we believe the evidence would support different inferences and conclusions regarding the likelihood of a repetition of neglect based on evidence regarding respondent-mother's circumstances at the time of the hearing. "Given the findings of fact, however, we would be speculating as to the trial court's rationale" were we to affirm its adjudication under either N.C.G.S. § 7B-1111(a)(1) or (2). *In re F.G.J.*, 200 N.C. App. 681, 694, 684 S.E.2d 745, 754 (2009).

The evidence and the trial court's findings show that, following the initial adjudication of neglect and dependency in March 2014, respondent-mother engaged in an extended period of positive drug screens and general non-compliance with the

court-ordered requirements for reunification. By the time of the May 2016 termination hearing, however, the nature and extent of respondent-mother's progress was improved.

As CCDHS conceded at the hearing, respondent-mother had an unbroken series of negative drug screens between June 2015 and March 2016, after completing her third substance abuse evaluation and third round of treatment. In July 2015, she attended and completed the six individual therapy sessions recommended by Genesis as part of her most recent substance abuse re-evaluation. Respondent-mother had separated from respondent-father in December 2014 and obtained a domestic violence protective order against him in June 2015, which remained in place at the time of the termination hearing. After obtaining her commercial driver's license, respondent-mother had obtained full-time employment as an interstate truck driver and was current on her child support payments.

In addition, with regard to respondent-mother's court-ordered parenting classes, the trial court found as follows:

> Mother completed parenting classes with Mar-Lee Cook, NC Certified Parent Educator, on June 5, 2014, and, as previously reported by Ms. Cook in her case summary, it is her experience with [respondent-mother and respondent-father] that, "nothing I say or present will change their parenting styles or the dysfunctional dynamics in the family."

Despite this negative report from Ms. Cook, which predates respondent-mother's separation from respondent-father, we find no evidence that CCDHS or the trial court ever prescribed additional parenting classes for respondent-mother after June 2014. Nor do the court's prior orders suggest that respondent-mother failed to demonstrate appropriate parenting techniques during her visitations, as originally ordered by the trial court.

To the contrary, the permanency planning orders show that respondent-mother consistently attended visitation throughout these proceedings and was found to interact with the children in an appropriate—and sometimes praiseworthy—manner. These orders include findings that respondent-mother "brings interactive fun activities for all her children to engage in, such as how to sew, doing nails, decorating shoes, board games, etc.," and that she "does a wonderful job of acknowledging and spending equal amounts of time with the children." After CCDHS permitted the eldest daughter, A.B., who was nearly fifteen years old at the time of the hearing, to opt out of visitations based on her belief that respondent-mother was overly critical of her, the court subsequently reiterated its finding that "[v]isits with the three younger children and [respondent-mother] go well and she is appropriate with the children."

The parties offered conflicting testimony with regard to respondent-mother's willingness or ability to notify CCDHS in advance of her availability for random drug

screens. Ms. Bowers testified that CCDHS had been unable to perform any subsequent random screens, because respondent-mother failed to notify the department of her availability based on her work schedule, other than during her scheduled visitations. Respondent-mother explained that, as a truck driver, she did not receive her work schedule in advance and had "no way" to know whether or when she would be in Cabarrus County during the work week. She provided CCDHS with the phone number of her fleet manager to verify this information.

While respondent-mother acknowledged that her current residence lacked water and electricity, she testified that she had the means to have these utilities turned on, but had chosen not to do so while her employment required her to stay out of town. We also note Ms. Bowers's testimony that respondent-mother's residence would "meet minimal standards" for the children, even without utilities, once a background check was performed on her aunt and any other adult residents in the downstairs dwelling.[4] Respondent-mother admitted having failed to provide CCDHS with the necessary personal information about her aunt but claimed her aunt had refused to authorize the disclosure.

We hold the trial court's findings and conclusions do not adequately account for respondent-mother's circumstances at the time of the termination hearing, as required to support a termination of her parental rights under N.C.G.S. 7B-1111(a)(1)

---

[4] Respondent-mother testified that her aunt's husband and daughter also lived downstairs.

or (2). As discussed above, the parties' evidence supports competing findings on material issues of fact, which in turn would support competing inferences with regard to the existence of grounds for termination. Accordingly, "we vacate the trial court's order and remand for further findings of fact and conclusions of law regarding N.C. Gen. Stat. § 7B-1111(a)[(1)–(2)]. The trial court may hear and receive additional evidence." *In re D.M.O.*, ___ N.C. App. at ___, 794 S.E.2d at 866; *see also In re F.G.J.*, 200 N.C. App. at 695, 684 S.E.2d at 755.

VACATED AND REMANDED.

Judges DAVIS and TYSON concur.