IN THE SUPREME COURT OF NORTH CAROLINA

No. 233A19

Filed 17 July 2020

IN THE MATTER OF: A.B.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 21 March 2019 and 18 April 2019 by Judge William Fairley in District Court, Columbus County. This matter was calendared for argument in the Supreme Court on 19 June 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*David S. Tedder, Assistant County Attorney, for petitioner-appellee Columbus County Department of Social Services.*

*Womble Bond Dickinson (US) LLP, by John E. Pueschel, for appellee Guardian ad Litem.*

*Annick Lenoir-Peek for respondent-appellant mother.*

HUDSON, Justice.

Respondent, the mother of minor child A.B.C. (Adam)[1], appeals from the trial court's order terminating her parental rights on the ground that she willfully failed to make reasonable progress to correct the conditions that led to Adam's removal from her care. *See* N.C.G.S. § 7B-1111(a)(2) (2019). Because we hold that the evidence and findings of fact support the trial court's conclusion that grounds existed to terminate

---

[1] A pseudonym is used to protect the juvenile's identity and for ease of reading.

respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2), and that the trial court did not abuse its discretion in concluding that it was in the child's best interests to terminate respondent's parental rights, we affirm.

Factual and Procedural Background

This is the second appeal in this case. The following facts and procedural history are derived in part from the Court of Appeals' opinion in *In re A.B.C.*, 821 S.E.2d 308, 2018 WL 6053343 (N.C. Ct. App. 2018) (unpublished).

On 10 April 2015, bystanders found respondent and her roommate sleeping inside of a car in the parking lot of respondent's employer. Adam, who was four months old at the time, was crying in the back seat. The bystanders were unable to wake respondent or the roommate and called emergency responders.

After this event, respondent agreed to place Adam with a safety resource. The following week, on 17 April 2015, Columbus County Department of Social Services (DSS) received a referral alleging that respondent was found unresponsive in a car parked in a hospital parking lot. Respondent was admitted to the hospital for treatment and observation due to a possible drug overdose. After this second incident, the safety resource became unwilling to be the placement for Adam.

On 20 April 2015, DSS filed a juvenile petition alleging that Adam was neglected and dependent and took him into nonsecure custody. After a hearing, the trial court adjudicated Adam as dependent and dismissed the neglect allegation in an order entered 16 June 2015. In a separate disposition order entered the same day,

the trial court ordered respondent to submit to a substance abuse assessment and a mental health assessment and to follow any resulting recommendations, comply with weekly random drug screens requested by DSS, enroll in and complete parenting classes, and establish suitable housing.

Respondent initially struggled to make progress on her case plan and was in and out of drug rehabilitation facilities and jail. On 5 July 2016, the trial court ceased reunification efforts with respondent and changed the permanent plan to guardianship with a court-approved caretaker with a secondary plan of adoption.

On 21 January 2017, respondent was arrested for violating her probation. She was released from jail in February 2017 and ordered to complete the six-month substance abuse program at a substance abuse treatment facility, Our House. After respondent completed the program at Our House, she was given the opportunity to continue with a residential substance abuse rehabilitation program at Grace Court where she could have resided with her child. However, respondent declined to enter the program at Grace Court, and she decided to live with her boyfriend. While respondent was participating in the program at Our House, the trial court held a permanency planning hearing on 20 March 2017. In an order entered 30 March 2017, the trial court changed the permanent plan to adoption with a secondary plan of guardianship with a court-approved caretaker.

On 12 May 2017, DSS filed a petition to terminate respondent's parental rights alleging the grounds of neglect, willful failure to make reasonable progress toward

correcting the conditions that led to Adam's removal from the home, willful failure to pay a reasonable portion of Adam's cost of care, dependency, willful abandonment, and that respondent's parental rights as to another child have been terminated and that she lacks the ability or willingness to establish a safe home. N.C.G.S. § 7B-1111(a)(1)–(3), (6)–(7), and (9) (2019). After multiple continuances, a hearing was held on the petition for termination on 3 and 17 January 2018. At the close of DSS's evidence, the trial court granted respondent's motion to dismiss the ground alleged by DSS concerning the fact that her parental rights as to another child had been terminated. On 1 February 2018, the trial court entered adjudication and disposition orders concluding that grounds existed to terminate respondent's parental rights based on her willful failure to make reasonable progress and that termination of respondent's parental rights was in Adam's best interests. The trial court dismissed the remaining alleged grounds, finding that DSS failed to satisfy its burden to prove the allegations. Respondent appealed to the Court of Appeals.

Before the Court of Appeals, respondent argued that the trial court erred in finding that she failed to make reasonable progress in correcting the conditions that led to Adam's removal from her care. *In re A.B.C.*, 2018 WL 6053343, at *2. The Court of Appeals concluded that there was "tension" between the trial court's findings that (1) respondent "willfully left the juvenile in foster care outside the home in excess of twelve months without showing to the Court's satisfaction that reasonable progress under the circumstances has been made in correcting those conditions which led to

the removal of the juvenile," and (2) "DSS 'failed to meet its burden to prove the allegations of . . . incapability of providing care and supervision as they relate to respondent.' " *Id*. at \*3. The Court of Appeals reasoned that, "if DSS failed to show that Respondent was incapable of providing care and supervision for her child going forward, it suggest[ed] that Respondent had made at least some reasonable progress." *Id*. Therefore, the Court of Appeals vacated the termination order and remanded the case to the trial court "for additional findings that eliminate the arguable tension" in order to "permit [the] Court to engage in a meaningful appellate review of the trial court's findings of fact and conclusions of law." *Id*. The Court of Appeals left it in the trial court's discretion whether to amend its findings based on the existing record, or whether to conduct further proceedings the trial court deemed necessary. *Id*.

On remand, the trial court did not take new evidence and on 21 March 2019, entered an amended adjudication order including additional findings of fact regarding the alleged grounds for termination. The trial court again found that grounds existed to terminate respondent's parental rights based on her willful failure to make reasonable progress toward correcting the conditions that led to Adam's removal from the home and found that DSS failed to meet its burden regarding the other alleged grounds for termination. In a separate amended disposition order entered 18 April 2019, the trial court concluded that termination of respondent's parental rights was in Adam's best interests. Respondent appealed.

<u>Analysis</u>

-5-

I. <u>Motion to Dismiss</u>

As an initial matter, DSS filed a motion to dismiss respondent's appeal from the trial court's 21 March 2019 adjudication order arguing that her notice of appeal was untimely because it was filed more than thirty days after entry and service of that order.

Section 7B-1001 of the General Statutes of North Carolina sets out the orders from which a party may appeal in juvenile matters and the appropriate court to which they may be appealed. Pursuant to N.C.G.S. § 7B-1001, a final order "that terminates parental rights or denies a petition or motion to terminate parental rights" may be appealed directly to this Court. N.C.G.S. § 7B-1001(a1)(1) (2019). In juvenile cases, "[n]otice of appeal . . . shall be given in writing . . . and shall be made within 30 days after entry and service of the order . . . ." N.C.G.S. § 7B-1001(b) (2019).

DSS claims that N.C.G.S. § 7B-1001 provides that notice of appeal from the trial court's adjudication order in a termination of parental rights case must be filed within thirty days after entry and service of the order. However, an adjudication order in a termination of parental rights case is not listed as one of the orders from which a party may appeal under N.C.G.S. § 7B-1001 because it does not terminate parental rights; it determines only whether grounds exist to terminate parental rights.

The North Carolina Juvenile Code provides for a two-stage process for the termination of parental rights: adjudication and disposition. N.C.G.S. §§ 7B-1109, -

1110 (2019). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e), (f). If the petitioner fails to satisfy its burden of proving that grounds exist to terminate parental rights, then the trial court must enter an order denying the petition or motion for termination. Such order is appealable pursuant to the second part of N.C.G.S. § 7B-1001(a1)(1), permitting an appeal from an order denying a petition or motion to terminate parental rights.

However, if the trial court finds that at least one ground exists to terminate parental rights, the resulting adjudication order is not a final order appealable under N.C.G.S. § 7B-1001, as the case then proceeds to the dispositional stage where the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a). Thus, an adjudication order in which the trial court determines that at least one ground exists to terminate parental rights necessarily requires entry of a disposition order to address whether termination of parental rights is in the child's best interests.

Here, there was no final order terminating parental rights from which respondent could appeal pursuant to N.C.G.S. § 7B-1001 until the trial court entered its disposition order on 18 April 2019. *Cf. In re P.S.,* 242 N.C. App. 430, 432, 775 S.E.2d 370, 372 (concluding in the abuse, neglect, and dependency context that "[a]n adjudication order—even where it includes a temporary disposition—is not a final

order" from which appeal of right lies under N.C.G.S. § 7B-1001), *cert. denied*, 368 N.C. 431, 778 S.E.2d 277 (2015); *In re Laney*, 156 N.C. App. 639, 643–44, 577 S.E.2d 377, 380 (concluding in the same context that the respondent-mother needed to notice an appeal from the final disposition order pursuant to N.C.G.S. § 7B-1001 in order for the adjudication order to be before the Court of Appeals), *disc. review denied*, 357 N.C. 459, 585 S.E.2d 762 (2003).[2] Respondent timely filed her notice of appeal within thirty days after entry and service of the disposition order, stating her desire to appeal both the adjudication order and the disposition order. Therefore, respondent's appeal of both the adjudication order and the disposition order is properly before this Court pursuant to N.C.G.S. § 7B-1001(a1)(1). As a result, we deny DSS's motion to dismiss.

II.     Challenged Findings of Fact

Respondent challenges several of the trial court's findings of fact. Findings of fact in support of a trial court's adjudication of grounds to terminate parental rights must be supported by clear, cogent, and convincing evidence. *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal. Moreover,

---

[2] We recognize that jurisdictional provisions of N.C.G.S. § 7B-1001 were recently amended to change the appellate court to which appeal of right lies in termination of parental rights cases. However, that amendment has no bearing on our determination that an adjudication order is not a final order from which a party has an immediate right to appeal under N.C.G.S. § 7B-1001. *See* S.L. 2017-41, § 8(a), 2017 N.C. Sess. Laws 214, 232–33.

we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019) (citations omitted).

Respondent first challenges finding of fact 38, which states that respondent had engaged in multiple programs addressing drug abuse and treatment since the filing of the underlying juvenile petition, including the substance abuse treatment program at Our House, and that the "programs would have helped her acquire the ability to overcome factors that resulted in the child's placement but she did not do so." Respondent argues that this finding of fact conflicts with finding of fact 66, in which the trial court found that respondent completed the rehabilitation program at Our House in August 2017. We agree.

The trial court found in both finding of fact 33 and finding of fact 66 that respondent completed the substance abuse treatment program at Our House, and the evidence unequivocally demonstrates the same. To the extent that finding of fact 38 implies that respondent did not complete the program at Our House, it is not supported by the evidence, and therefore we disregard this specific portion of that finding of fact.

Respondent next challenges findings of fact 40 and 41, which state the following:

> 40. That throughout the life of the case respondent mother's housing has frequently been either jail or a treatment facility of some sort and she has not established

stable housing.

> 41.    That when not incarcerated or in a treatment facility respondent mother was and is currently staying with friends who provide accommodations. These friends and accommodations varied.

Respondent argues that these findings of fact fail to address her housing conditions at the time of the termination hearing. She argues that since she completed the substance abuse treatment program at Our House in August 2017, she had been living with her boyfriend in a three-bedroom home. We agree that these findings of fact are not supported by the evidence.

The trial court found that respondent "was and *is currently* staying with friends who provide accommodations." (Emphasis added). At the termination hearing, the social worker testified that "since [she] was involved in the case[,]" respondent's housing was "either jail or treatment facilities." Yet the social worker also testified that she was unaware of respondent's exact whereabouts at the time of the termination hearing and that respondent had informed her that she was living in Robeson County, although the social worker did not know the physical address. The social worker also testified that she had stopped being involved in the case on 1 September 2017. Thus, the social worker did not have knowledge of respondent's housing situation in the four months leading up to the termination hearing. Respondent and her boyfriend provided the only evidence regarding her housing situation from September 2017 through the termination hearing in January 2018.

Respondent testified that she lived in a three-bedroom home with her boyfriend, with whom she had been in a relationship for about one year, and that she had been living with him there since completing the program at Our House in August 2017. Respondent's boyfriend also testified that they had been living in the home together since respondent was released from the program. Indeed, the trial court found that respondent opted to live with her boyfriend after she completed the program. Although the home was owned by the father of respondent's boyfriend, the trial court's finding of fact that states that respondent was currently staying with a friend who provided accommodations is supported by the evidence but is incomplete.

### III.  Grounds to Terminate Parental Rights

Respondent argues that the trial court erred by concluding that grounds existed to terminate her parental rights based on her willful failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(2). Because the trial court's unchallenged findings of fact support the conclusion that respondent failed to make reasonable progress on her substance abuse issue which "was the core cause of the circumstances" that led to the child's removal from respondent's care, we affirm.

We review a trial court's adjudication that grounds exist to terminate parental rights to determine "whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings support the trial court's conclusions of law." *In re B.O.A.*, 372 N.C. at 379, 831 S.E.2d at 310 (citation omitted). "Unchallenged findings of fact made at the adjudicatory stage, however, are binding

on appeal." *In re D.W.P.*, 373 N.C. 327, 330, 838 S.E.2d 396, 400 (2020) (citation omitted).

Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). This Court has stated that "a trial judge should refrain from finding that a parent has failed to make 'reasonable progress . . . in correcting those conditions which led to the removal of the juvenile' simply because of his or her 'failure to fully satisfy all elements of the case plan goals.' " *In re B.O.A.*, 372 N.C. at 385, 831 S.E.2d at 314 (citation omitted). However, we have also stated that "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *Id.* (citation omitted).

Here, the trial court's finding of fact 67 establishes that "substance abuse was the core cause of the circumstances that brought the child into foster care originally." In finding of fact 66, the trial court determined that respondent failed to make reasonable progress. The trial court found that respondent made only "marginal progress" due to her failure to continue her substance abuse treatment after she

completed the six-month substance abuse treatment program at Our House, in that she:

> a) declined further rehabilitative services at Grace Court in August of 2017, services which would have allowed her to reside with her child while receiving residential rehabilitation services;
>
> b) entered a methadone program without any counseling or plan to wean or otherwise end her methadone dependence; and
>
> c) the [c]ourt does not believe the respondent mother's contention that she is in counseling through AA or NA[ ] or any other recovery program.

Further, the trial court found that respondent's progress was not reasonable under the circumstances because her failure to continue with rehabilitation programs demonstrated that she "failed to apply th[e] capabilities" that she learned during the program at Our House toward resolving her "longstanding addiction" issue.

These unchallenged findings of fact[3] support the trial court's conclusion that respondent failed to make reasonable progress to correct the conditions that led to the removal of Adam from her care. Specifically, these findings of fact establish that, after participating in the program at Our House, respondent decided to address her

---

[3] Respondent does not challenge findings of fact 66 and 67 in her brief. In fact, she uses the veracity of finding of fact 66 to challenge the trial court's finding of fact 38. Because findings of fact 66 and 67 are sufficient to support the trial court's conclusion that grounds existed to terminate respondent's parental rights, we need not further address finding of fact 38 beyond our discussion above. *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019) ("Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." (citation omitted)).

"longstanding addiction" issue solely by entering a methadone program without any counseling plan to resolve her resultant dependence on that substance. Further, we note that it is not the role of this Court to second-guess the trial court's credibility determination, specifically that respondent's testimony concerning her participation in counseling programs was not credible. *See In re J.A.M.*, 372 N.C. 1, 11, 822 S.E.2d 693, 700 (2019) ("But an important aspect of the trial court's role as finder of fact is assessing the demeanor and credibility of witnesses, often in light of inconsistencies or contradictory evidence. It is in part because the trial court is uniquely situated to make this credibility determination that appellate courts may not reweigh the underlying evidence presented at trial."). Moreover, the fact that respondent decided to address her substance abuse issues in this manner—without counseling, all the while having the available option to continue with another residential rehabilitation program that would have allowed her to reside with her child—after she completed the program at Our House is of great significance. As the trial court explained, respondent's approach demonstrated that she failed to apply the tools that she learned during the program at Our House to adequately address her substance abuse issue—the "core cause" of the child's removal from her care—by the time of the termination hearing. Therefore, the trial court's findings of fact support the conclusion that respondent failed to make reasonable progress toward correcting the conditions which led to the child's removal from her care. N.C.G.S. § 7B-1111(a)(2).

Accordingly, we hold that the trial court did not err in concluding that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

IV.    Disposition under N.C.G.S. § 7B-1110

Respondent also contends that the trial court abused its discretion under N.C.G.S. § 7B-1110(a) by determining it was in Adam's best interests to terminate her parental rights. Because we conclude that the trial court did not abuse its discretion, we affirm the trial court's decision to terminate respondent's parental rights.

If the trial court finds grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it proceeds to the dispositional stage where it must "determine whether terminating the parent's rights is in the juvenile's best interest" based on the following factors:

> (1)    The age of the juvenile.
>
> (2)    The likelihood of adoption of the juvenile.
>
> (3)    Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4)    The bond between the juvenile and the parent.
>
> (5)    The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6)    Any relevant consideration.

N.C.G.S. § 7B-1110(a). It is well-established that the trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed only for abuse of discretion. *In re D.L.W.*, 368 N.C. at 842, 788 S.E.2d at 167; *In re L.M.T.*, 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Dispositional findings not challenged by respondent-mother are binding on appeal. *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019) (citation omitted).

Here, the trial court made the following all-encompassing finding of fact concerning the factors in subsection 7B-1110(a):

> 13. That the minor child is almost 3 years of age; that the likelihood of adoption is extremely high; that termination of parental rights will aid in the accomplishment of the permanent plan of the juvenile; that the bond between the juvenile and respondent mother is similar to that of playmates . . . that the quality of the relationship between the juvenile and the proposed adoptive parent is similar to that of parent/child.

The only part of this finding of fact that respondent challenges is the trial court's finding that the relationship between her and the child "is similar to that of playmates."

The finding of fact concerning the relationship between respondent and the child being similar to that of playmates, however, is supported by the testimony of

the social worker who supervised respondent's visits with the child. Specifically, the social worker testified that (1) the child associated his visits with respondent with "play"; (2) the child did not refer to respondent as "Mom" during the visits, and respondent had to instruct him to call her "Mom"; (3) respondent and the child played very loudly during the visits such that the social worker had to tell them to "calm down"; and (4) the social worker never observed respondent assume a "supervision or a parental role" during the visits.

Respondent's only other challenge to the trial court's finding of fact concerning the relationship between respondent and the child being similar to that of playmates is that the "limited circumstances" of the supervised visits did not allow respondent to have an "opportunity to show her ability to provide care for [the child]." Respondent does not, however, point us to any authority or evidence in support of the proposition that the context of a supervised visit had a confounding effect on her ability to form or demonstrate a parental bond with the child.

Finally, respondent argues that the trial court abused its discretion in its analysis of the best interests of the child because it improperly made the decision of whether to terminate parental rights into a choice between respondent and the child's foster parent. Respondent relies on the Court of Appeals' opinion in *In re Nesbitt* for the proposition that it is improper for the trial court to "relegate[ ] [the decision of whether to terminate parental rights] to a choice between the natural parent and the foster family." 147 N.C. App. 349, 360–61, 555 S.E.2d 659, 667 (2001). *In re Nesbitt*

quoted from this Court's decision in *Peterson v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994), to support that proposition. *In re Nesbitt*, 147 N.C. App. at 361, 555 S.E.2d at 667 ("Our Supreme Court has held that 'even if it were shown, . . . that a particular couple desirous of adopting a child would *best* provide for the child's welfare, the child would nonetheless not be removed from the custody of its parents so long as they were providing for the child *adequately*.' " (quoting *Peterson*, 337 N.C. at 401, 445 S.E.2d at 904)).

Here, by construing the trial court's finding of fact 13 in conjunction with findings of fact 18–21, 29, and 31, respondent argues that the trial court improperly relegated the decision concerning whether to terminate respondent's parental rights into one involving a choice between respondent and the child's foster parent. Respondent asserts that findings of fact 18–21, 29, and 31 "portrayed the foster home as 'better' than [respondent's]." Findings of fact 18–21, 29, and 31 are reproduced as follows:

> 18. That the juvenile has been placed with [the foster parent] since he was approximately 4 months. [The foster parent's] 3-year[-old] granddaughter lives with [the foster parent] and the juvenile. The granddaughter and the juvenile get along very well together.
>
> 19. That [the foster parent] has been responsible for the juvenile's day-to-day care and supervision for approximately the last 30 months. The de facto relationship between [the foster parent] and the juvenile is akin to mother/son in that she provides for the emotional and physical needs of the juvenile. [The foster parent]

appropriately guides and supervises the juvenile together with providing care and discipline.

20.     That the juvenile looks to [the foster parent] for guidance, comfort and security.

21.     That the juvenile is healthy and happy in the care of [the foster parent] and the relationship between the two is extremely close and significant to the juvenile.

. . . .

29.     That this [c]ourt acknowledges that respondent mother loves the juvenile but the relationship between respondent mother and the juvenile is not akin to the relationship between [the foster parent] and the juvenile.

. . . .

31.     That the bond that exists between the minor child and respondent mother is good but not parental, and is most similar to a bond between playmates.

We note that the Court of Appeals' decision in *In re Nesbitt* is not binding on this Court, moreover the findings of fact quoted here fail to demonstrate that the trial court relegated the decision of whether to terminate respondent's parental rights to a decision between respondent and the foster parent. *See In re Nesbitt,* 147 N.C. App. at 361, 555 S.E.2d at 667. Specifically, findings of fact 18–21 and 31 involve no comparison between respondent and the foster parent whatsoever. Further, although finding of fact 29 does make a comparison between respondent's and the foster parent's relationship with the child, the trial court was not endeavoring to determine whose relationship with the child was qualitatively "better." Viewing finding of fact

29 in light of the trial court's conclusion of law concerning the best interests of the child demonstrates that the trial court's ultimate assessment of respondent's relationship with the child was that it was not "akin" to a parental relationship. The trial court's conclusion of law regarding the best interests of the child is reproduced as follows:

> 3.      That the minor child is almost 3 years of age; that the likelihood of adoption is extremely high; that termination of parental rights will aid in the accomplishment of the primary permanent plan of the juvenile; that the bond between the juvenile and respondent mother is akin to playmates; . . . that the quality of the relationship between the juvenile and the proposed adoptive parent is similar to that of parent/child and adoption is extremely high.

The trial court's conclusion of law on the issue of the best interests of the child is virtually identical to the trial court's finding of fact 13, and it draws no direct comparison between respondent and the foster parent. The trial court's conclusion of law merely follows the directive of N.C.G.S. § 7B-1110(a) to evaluate both the "bond" between respondent and the juvenile and the "quality of the relationship" between the juvenile and the proposed adoptive parent.

Further, the trial court's determination in its conclusion of law that respondent's relationship with the child was "*akin to* playmates," illuminates the reasoning behind the trial court's statement in finding of fact 29 that respondent's relationship with the child was not "*akin to* the relationship between [the foster parent] and the juvenile." (Emphases added). Thus, it appears that finding of fact 29

simply communicated that respondent's relationship with the child was not "akin" to a parental relationship. The trial court's mention of the foster parent in finding of fact 29 serves as somewhat of an inartful proxy for describing the quality of the parental relationship.

Accordingly, the trial court's conclusion that it was in the child's best interests to terminate respondent's parental rights was supported by evidence in the record, was reached according to the directive of N.C.G.S. § 7B-1110(a), and was not otherwise arbitrary. Therefore, because the trial court's decision was not an abuse of its discretion, we affirm that decision.

## Conclusion

Because we hold that the evidence and findings of fact support the trial court's conclusion that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2), and that the trial court did not abuse its discretion in concluding that it was in the child's best interests to terminate respondent's parental rights, we affirm.

AFFIRMED.

Justice EARLS, dissenting.

In vacating the trial court's original "Order of Adjudication on Termination of Parental Rights" finding grounds to terminate respondent-mother's parental rights to her son Adam, the Court of Appeals directed the trial court to resolve the central factual question of how respondent-mother failed to make reasonable progress toward correcting the conditions that led to Adam being removed from her care when the evidence failed to establish that she was incapable of providing proper care and supervision for Adam. *In re A.B.C.*, 821 S.E.2d 308, 2018 WL 6053343 (N.C. Ct. App. 2018) (unpublished). The Court of Appeals held that doing so was necessary to "permit th[e] [c]ourt to engage in meaningful appellate review of the trial court's findings of fact and conclusions of law." *Id.* at *1. On remand, the trial court's minimal new findings of fact do not address this contradiction, and are not based on "clear, cogent, and convincing evidence" that supports the legal conclusion that the respondent failed to make reasonable progress to correct the issue that led to Adam being removed from her care. *See* N.C.G.S. § 7B-1111(a)(2) (2019).

Contrary to the majority's characterization, this is not a question of whether to accept the trial court's credibility determination regarding whether or not respondent attended counseling programs through Alcoholics Anonymous (AA) or Narcotics Anonymous (NA). The issue here is whether the trial court adequately

addressed the Court of Appeals direction on remand; whether the findings of fact made by the trial court are supported by clear, cogent, and convincing evidence in the record; and whether the trial court's findings adequately support its conclusions of law. The trial court's finding of fact, adopting language used by the Court of Appeals, that respondent made only "marginal progress" towards correcting the conditions that led to the removal of the child from her care is directly contradicted by its finding of fact that DSS "has failed to carry its burden of proof as to [the] alleged incapacity of the respondent mother to provide proper care and supervision of the child, … indeed, the respondent mother demonstrated such capabilities by completing a rehabilitation program at 'Our House' in August, 2017. … Thus, the [c]ourt cannot say by clear, cogent and convincing evidence that the respondent mother is 'incapable' of providing proper care and supervision." Not only did respondent complete the rehabilitation program, she was no longer homeless, had a stable living arrangement in a three-bedroom home, and was living with and parenting her younger child. I dissent and would reverse the trial court's termination orders because petitioners have failed to establish any grounds to terminate respondent's parental rights as to Adam.

In its earlier opinion in this case, the Court of Appeals stated the following:

> It is likely that the trial court's findings mean that Respondent made some marginal improvements since the filing of the petition and, thus, was not totally incapable of providing care and supervision for her child, but that, nonetheless, Respondent's progress was not enough to

demonstrate "to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). But because of the important liberty interests that are implicated when a court terminates parental rights, we will remand this case for additional findings that eliminate the arguable tension identified by Respondent and permit this Court to engage in a meaningful appellate review of the trial court's findings of fact and conclusions of law. *See In re A.B.*, 239 N.C. App. 157, 172, 768 S.E.2d 573, 581-82 (2015).

On remand, the trial court, in its discretion, may amend its findings based on the existing record, or may conduct any further proceedings that the court deems necessary.

*In re A.B.C.*, 2018 WL 6053343, at *3. Hearing no new evidence,[1] the trial court simply amended its prior order to include the above-quoted language of the Court of Appeals, failing to even correct the date of the order. The first sixty-two paragraphs of the amended order are exactly the same as the prior Order. Indeed, the only new findings are contained in finding of fact 66. There, the trial court paraphrased the

---

[1] While the Court of Appeals left to the trial court's discretion whether new evidence should be heard, I would note that as with neglect, a trial court must consider evidence of changed circumstances at the time of the TPR hearing to terminate parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). *In re O.C.,* 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005) ("to find grounds to terminate a parent's rights under G.S. § 7B-1111(a)(2), the trial court must . . . determine . . . that as of the time of the hearing, . . ., the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child"); *see also In re A.B.*, 253 N.C. App. 29, 30, 799 S.E.2d 445, 447 (2017) ("Where the trial court's findings and conclusions do not adequately account for respondent-mother's circumstances at the time of the termination hearing, as required to support a termination of her parental rights under N.C.G.S. § 7B1111(a)(1) or (2), we vacate and remand.")

passage from the Court of Appeals opinion excerpted above and identified its three reasons why respondent's progress with regard to her case plan was not adequate. Namely that she declined to live at Grace Court following the residential treatment program, that her methadone program did not include counseling or other plan to end her methadone dependence, and that she was not receiving counseling through AA, NA or any other recovery program. These findings of fact do not support the trial court's conclusion that respondent failed to make reasonable progress to correct the conditions that led to the removal of Adam from her care.

At the time of the termination hearing, respondent had successfully completed a six-month residential substance abuse program at a rehabilitation facility and had been drug-free for nearly one year. Respondent continued her substance abuse rehabilitation by voluntarily participating in a methadone program, a medication-based therapy program for treating opioid addiction. Although the trial court found that respondent declined to enter Grace Court after her completion of the program at Our House, respondent was never ordered to participate in the additional program. A parent's decision not to attend an optional long-term residential rehabilitation program after successfully completing an initial six-month residential rehabilitation program and voluntarily participating in an out-patient treatment program does not show a lack of reasonable progress by the parent.

Moreover, the evidence and supported findings also show that respondent had been living in a three-bedroom home with her boyfriend for five months and that she

was engaging in regular visitation with Adam that went well. Although respondent's progress on her case plan regarding housing is partly attributed to her relationship with her boyfriend, respondent's "case plan does not and cannot require that she alone be responsible for providing her housing and transportation." *In re C.N.*, 831 S.E.2d 878, 884 (N.C. Ct. App. 2019); *see also id.* ("Nothing in the record suggests or supports the finding that the Respondent-mother's dependence on her present boyfriend for housing, transportation, and for providing her a cell phone bears any relation to the causes of the conditions of the removal of [the children] from their mother's home.").

The trial court found that it did not believe respondent's testimony that she was in counseling. However, DSS bore the burden of proving by clear, cogent, and convincing evidence that grounds existed to terminate respondent's parental rights. N.C.G.S. § 7B-1109(f). Aside from respondent's testimony, DSS did not present any evidence of respondent's participation, or lack thereof, in counseling and therapy. DSS's only evidence during the adjudication stage of the hearing was from a child support enforcement supervisor, who did not testify as to respondent's participation in counseling, and a social worker, who had not been involved in respondent's case for the four months prior to the termination hearing. The social worker testified that DSS "[was] not aware of any completion of any of the goals" of respondent's case plan. However, it is undisputed that respondent participated in the residential rehabilitation program at Our House from February 2017 through August 2017.

Additionally, the social worker stopped being involved in the case on 1 September 2017 and did not testify regarding respondent's actions or inactions from September 2017 through the termination hearing in January 2018. An absence of evidence is far from clear, cogent, and convincing evidence that respondent did not complete the requirements of the case plan.

Although respondent did not complete every aspect of her case plan, "[a] parent's failure to fully satisfy all elements of the case plan goals is not the equivalent of a lack of 'reasonable progress.' " *In re J.S.L.*, 177 N.C. App. 151, 163, 628 S.E.2d 387, 394 (2006). The trial court found that respondent successfully completed the court-ordered six-month residential substance abuse program and continued seeking substance abuse treatment by voluntarily participating in a methadone program. Evidence was also presented that respondent remained drug-free after completing the residential substance abuse program, obtained suitable housing as required by her case plan, and regularly visited with Adam, during which she behaved appropriately.

The trial court's finding of fact regarding respondent's participation in a methadone program is particularly inappropriate as a basis for concluding that she has not made reasonable progress. It is undisputed that respondent was drug tested frequently as part of her probation and methadone treatment. Respondent testified that she saw a therapist once a month and that a medical decision had been made not to wean her from methadone while she was experiencing back pain. Even though

the trial court specifically found that respondent's statements about counseling were not believable, it is for a medical professional, not the trial court, to determine whether and how respondent's duly prescribed medications should be discontinued. As long as she was meeting the requirements of the methadone program she was enrolled in, respondent would, in fact, be held accountable for *not being compliant* if she chose to stop taking a medication being prescribed for her. Moreover, drug addiction is a brain disease. *See, e.g.,* Nora D. Volkow, George F. Koob, and A. Thomas McLellan, *Neurobiologic Advances from the Brain Disease Model of Addiction*, 374 N. Engl. J. Med. 363 (2016) (reviewing recent advances in neurobiology of addiction to clarify link between addiction and brain function and to broaden understanding of addiction as a brain disease.) A parent who is following a doctor's orders in a treatment program should not have that fact held against her, just as one would not conclude that a diabetic relying on medication to control their diabetes rather than diet and exercise is failing to make reasonable progress towards good health.

Finally, respondent argues that she could have resumed custody of Adam as evidenced by her having custody of her younger daughter Amy. While not determinative, this Court has certainly considered it relevant when a parent has previously had their parental rights terminated as to another child. Here, the fact that respondent was parenting another child without any evidence of neglect should

have been relevant to the issue of whether respondent made reasonable progress towards addressing the conditions that led to her son being removed from her care.

Willfulness "is established when the respondent had the ability to show reasonable progress but was unwilling to make the effort." *In re Fletcher*, 148 N.C. App. 228, 235, 558 S.E.2d 498, 502 (2002). In the context of a termination of parental rights proceeding, "the word 'willful' connotes purpose and deliberation." *See, e.g., In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995). The trial court's finding that respondent declined to enter a second, optional long-term residential rehabilitation program and its finding that she was participating in the methadone program without a plan to wean off of the methadone, along with its finding that it did not believe respondent's testimony that she was in counseling, do not support its conclusion that respondent willfully left her child in care and did not make reasonable progress to correct the conditions that led to Adam's removal from her care. *See In re C.N.*, 831 S.E.2d at 884 (holding that the trial court's findings that the respondent-mother "had not been consistent in her treatment, was not fully compliant with her case plan, and had only recently re-engaged in some services" did not support the trial court's conclusion that the respondent-mother had not made reasonable progress); *cf. In re I.G.C.*, 373 N.C. 201, 205–06, 835 S.E.2d 432, 435 (2019) (affirming an order terminating parental rights under N.C.G.S. § 7B-1111(a)(2) where, despite findings that the respondent-mother complied with her case plan by completing multiple parenting courses, participating in domestic violence and substance abuse

treatment, and testing negative at three recent drug screens, there were additional findings that the respondent-mother's substance abuse and domestic violence treatment were shorter in duration and less intense than recommended, she never completed a court-ordered substance abuse assessment, and she admitted that she would not feel comfortable caring for the children for another "year, year and a half" because she feared she would relapse). Therefore, the trial court erred in concluding that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

Respondent also claims the trial court abused its discretion under N.C.G.S. § 7B-1110(a) by determining that it was in Adam's best interests to terminate her parental rights. Having concluded that the trial court erred in adjudicating grounds for terminating respondent's parental rights under N.C.G.S. § 7B-1111(a), there is no need to address this issue. *In re Young*, 346 N.C. 244, 252, 485 S.E.2d 612, 617 (1997).

The statute concerning the dispositional phase of a termination of parental rights proceeding provides that, where "circumstances authorizing termination of parental rights do not exist, the court shall dismiss the petition." N.C.G.S. § 7B-1110(c) (2019). I would therefore reverse the trial court's orders and remand the cause for the dismissal of DSS's petition. *See Young*, 346 N.C. at 253, 485 S.E.2d at 618.

Chief Justice BEASLEY and Justice DAVIS join in this dissenting opinion.