626 S.E.2d 729 (2006)
In re A.C.F., Minor Child.
No. COA05-764.
Court of Appeals of North Carolina.
March 7, 2006.
J. David Abernethy, Newton, for Catawba County Department of Social Services, petitioner-appellee.
Mercedes O. Chut, Greensboro, for respondent-mother.
Mary McKay, Morganton, Guardian ad Litem.
*731 LEVINSON, Judge.
Respondent-mother (respondent) appeals from the orders of adjudication and disposition terminating her parental rights in A.C.F. The trial court erred in its conclusion that grounds existed under N.C. Gen.Stat. § 7B-1111(a)(2) (failure to make reasonable progress) to terminate respondent's parental rights.
The evidence presented at the termination hearing may be summarized as follows: A.C.F. was born 15 March 2000 and resided with respondent until February 2002, when law enforcement officers searched respondent's residence and discovered she was in possession of various controlled substances. Following the search of respondent's home, respondent voluntarily agreed to have A.C.F. reside in the care of a third party pursuant to a voluntary placement agreement.
On 26 November 2002 Catawba County Department of Social Services (DSS) obtained custody of A.C.F. pursuant to a non-secure custody order. On 4 March 2003 A.C.F. was adjudicated neglected, and his custody remained with DSS. On 11 September 2003 DSS filed a motion to terminate respondent's parental rights, alleging (1) neglect pursuant to N.C. Gen.Stat. § 7B-1111(a)(1), and (2) willfully leaving A.C.F. in foster care or placement outside the home for more than twelve months and failing to make reasonable progress in correcting the conditions which led to the child's removal pursuant to N.C. Gen.Stat. § 7B-1111(a)(2). Following a hearing 17 November 2004 and 12 January 2005, the trial court concluded the evidence only supported termination of respondent's parental rights pursuant to G.S. § 7B-1111(a)(2) (failure to make reasonable progress), and entered orders of adjudication and disposition terminating respondent's rights 8 March 2005. Respondent appeals.
Respondent contends the trial court erred by concluding as a matter of law that grounds exist to terminate her parental rights pursuant to G.S. § 7B-1111(a)(2). Respondent contends that A.C.F. had not been "removed" from respondent's home for the requisite period of time before DSS filed the motion to terminate parental rights. We agree.
A termination of parental rights proceeding is conducted in two stages. Under N.C. Gen.Stat. § 7B-1109(e) (2005), the trial court "shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. § 7B-1111 which authorize the termination of parental rights of the respondent." At the disposition stage under N.C. Gen.Stat. § 7B-1110 (2003), "[s]hould the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent... unless the court shall further determine that the best interests of the juvenile require that the parental rights not be terminated."
This Court reviews a termination of parental rights to determine "whether the court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law." In re Pope, 144 N.C.App. 32, 40, 547 S.E.2d 153, 158 (2001) (internal quotation marks and citation omitted).
G.S. § 7B-1111(a)(2) (2005) provides that one's parental rights may be terminated where:
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing *732 to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile....
Respondent's argument presents two questions regarding G.S. § 7B-1111(a)(2): (1) the meaning of "left ... in foster care or placement outside the home" and "removal of the juvenile"; and (2) how to measure the time frame, "for more than 12 months". Our research reveals these questions have not been specifically addressed by our appellate courts.
"Questions of statutory interpretation are questions of law, which are reviewed de novo by an appellate court." In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co., 161 N.C.App. 558, 559, 589 S.E.2d 179, 180 (2003).
The intent of the legislature controls the interpretation of a statute.... When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein. But when a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will and the courts will interpret the language to give effect to the legislative intent.... [T]he legislative intent "... is to be ascertained by appropriate means and indicia, such as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes in pari materia, the preamble, the title, and other like means...." Other indicia considered by this Court in determining legislative intent are ... previous interpretations of the same or similar statutes.
Finally, it is a well settled rule of statutory construction that, where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded.
In re Banks, 295 N.C. 236, 239-40, 244 S.E.2d 386, 388-89 (1978) (citations omitted).
As used in G.S. § 7B-1111(a)(2), the word "left" in "left the juvenile in foster care or placement outside the home" could implicate a broad range of meanings. A parent might have "left" his child in foster care or placement where the same was required by a juvenile court order. A parent might have "left" his child in another adult's home even though the same was neither required by a juvenile court order nor urged by a social services entity. Or a parent might have "left" his child in another's home not because the same was required by a juvenile court order, but because he voluntarily agrees (consistent with a family services plan crafted by a social services entity) that the child should be "left" in someone else's care.
The term "removal" in "removal of the juvenile" in G.S. § 7B-1111(a)(2) could likewise implicate a variety of different meanings. Interpreted narrowly, "removed" from one's home might occur only where the juvenile court has entered an order requiring the same. Interpreted broadly, a parent might "remove" a child from his home anytime he places the child in another's care even though the same was neither required by a juvenile court order nor urged by a social services entity. A third interpretation of "removal" might include circumstances where a parent agrees, in the absence of a court order, that a child should be placed in another's care as a part of a family services plan crafted by a social services entity.
In determining the meaning of "left in foster care or placement" and "removal" in G.S. § 7B-1111(a)(2), we first consider our Supreme Court's decision in In re Pierce, 356 N.C. 68, 565 S.E.2d 81 (2002). In Pierce, a significant issue was the application of the "within twelve months" time frame for examining parental progress under former N.C. Gen.Stat. § 7A-289.32(3) (1998):
The parent has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable *733 progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the child.
In Pierce, the child was initially sent to live with her paternal grandmother in June 1997 pursuant to a "protection plan" constructed by the New Hanover County Department of Social Services. In re Pierce, 146 N.C.App. 641, 654, 554 S.E.2d 25, 33 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). Less than one month later, the child returned to live with her parents. Pierce, 356 N.C. at 69, 565 S.E.2d at 82. In August 1997, DSS petitioned the court for custody and the child was placed in foster care. Id. In December 1998, the child was placed in the care of her father's first cousin and her husband. Id. Under these facts, our Supreme Court determined that, for purposes of N.C. Gen.Stat. § 7A-289.32(3) (now substantially codified in G.S. § 7B-1111(a)(2)), the child "was placed outside the home in late July or early August of 1997[,]" Pierce, 356 N.C. at 73, 565 S.E.2d at 85, and determined that "[o]ther evidence regarding [the mother's] progress dated back as far as the time the child was removed from the home, in August of 1997." Pierce, 356 N.C. at 74, 565 S.E.2d at 85. Therefore, our Supreme Court observed that the child had not been "placed" or "removed" for purposes of the applicable termination statute until the child had become the subject of a custody order. This was so notwithstanding the fact the child had been separated from her parents pursuant to a DSS protection plan as early as June 1997. Our Supreme Court's analysis of when the child was "placed" outside the home, according to G.S. § 7A-289.32(3), is strong authority that a child is "left in foster care or placement" or "removed" from the parent's care under G.S. § 7B-1111(a)(2) only when the same occurs by virtue of a court order.
Moreover, reading "left ... in foster care or placement" and "removal of the juvenile" in G.S. § 7B-1111(a)(2) to refer only to placements and removals required by court order is in keeping with the common usage of these words in statutes throughout the Juvenile Code where the juvenile court has asserted jurisdiction over children. See, e.g., N.C. Gen.Stat. § 7B-505 (2005) (Place of nonsecure custody); N.C. Gen.Stat. § 7B-506 (2005) (Hearing to determine need for continued nonsecure custody); N.C. Gen.Stat. § 7B-907 (2005) (Permanency planning hearing); N.C. Gen.Stat. § 7B-507 (2005) (Reasonable efforts); and N.C. Gen.Stat. § 7B-903 (2005) (Dispositional alternatives for abused, neglected or dependent juveniles).
We also observe that, in reading G.S. § 7B-1111(a)(2) in its entirety, the issue of reasonable progress on the conditions which led to the "removal" of the juvenile is necessarily tied to the leaving of a child in foster care or placement. That "removal" suggests that the child was involuntarily taken out of one's home seems obvious to us. As such, "removal" cannot occur within the meaning of G.S. § 7B-1111(a)(2) where the parent has voluntarily agreed, in the absence of a court order, to place his child in another's home. Stated differently, a child cannot be involuntarily "removed" from a parent's home where the parent can withdraw his consent at anytime; this is generally the case when there is not a court order in place.
Finally, an interpretation of "left ... in foster care or placement outside the home" and "removal" in G.S. § 7B-1111(a)(2) that broadly covers circumstances where parents leave their children in others' care without regard to involvement of the juvenile court may lead to nonsensical results. There are an infinite variety of reasons parents decide to entrust their children's care to others. Oftentimes, these reasons will not implicate the child welfare concerns of the State. To allow the termination ground set forth in G.S. § 7B-1111(a)(2) to be triggered no matter what the cause for a child's separation from his parent is inconsistent with affording parents notice that they are at risk of losing their parental rights. Instead, it is logical that the General Assembly, in adopting G.S. § 7B-1111(a)(2), was primarily concerned with allowing termination where a juvenile court was involved in the "removal" of the child.
Consistent with Pierce and principles of statutory construction, we conclude the legislature did not intend for any separation between a parent and a child to trigger the *734 termination ground set forth in G.S. § 7B-1111(a)(2)(failure to make reasonable progress). Instead, we conclude the statute refers only to circumstances where a court has entered a court order requiring that a child be in foster care or other placement outside the home.
We next address how to measure the time frame, "for more than 12 months" set forth in G.S. § 7B-1111(a)(2). This phrase lends itself to two interpretations: the duration of time beginning when the child was "left" in foster care or placement outside the home pursuant to a court order, and ending when the motion or petition for termination of parental rights was filed; or (2) the duration of time beginning when the child was "left" in foster care or placement outside the home pursuant to a court order, and ending on the date of the termination hearing.
We are guided by this Court's analysis in In re Baker, 158 N.C.App. 491, 494, 581 S.E.2d 144, 146 (2003). In Baker, this Court interpreted "for more than 12 months" as a period of at least twelve months preceding the date the motion or petition for termination of parental rights was filed:
In the case sub judice, it is undisputed that the juvenile was in foster care for more than twelve months prior to the filing of the petition. However, to sustain the trial court's finding that grounds existed for termination of parental rights under G.S. § 7B-1111(a)(2), we must also determine that there was clear, cogent, and convincing evidence that (1) respondents "willfully" left the juvenile in foster care for more than twelve months, and (2) that each respondent had failed to make "reasonable progress" in correcting the conditions that led to the juvenile's removal from the home.
Baker, 158 N.C.App. at 494, 581 S.E.2d at 146 (citation omitted).
Unlike Baker, this Court's recent opinion in In re O.C. and O.B., 171 N.C.App. 457, 615 S.E.2d 391, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005), suggests that the twelve-month period can be measured by including the period leading up to the actual termination hearing. In discussing the provisions of G.S. § 7B-1111(a)(2), the O.C. and O.B. panel stated:
The children were removed from the home pursuant to the petition for non-secure custody filed 13 November 2001 and had been in foster care for more than twelve months at the time of the termination hearing on 2 June 2003 and 2 September 2003. The conditions leading to the removal of the children were, in large measure, due to domestic violence and respondent's substance abuse.
Id. at 466-67, 615 S.E.2d at 397 (emphasis added). In O.C. and O.B., however, this Court was not presented with the question of whether the twelve-month period must expire before the motion or petition to terminate is filed, and the language quoted above was therefore not necessary to the holding of that case. We conclude that the above language from O.C. and O.B. constitutes dicta and is not binding precedent. See State v. Hickey, 317 N.C. 457, 465, 346 S.E.2d 646, 652 (1986) (obiter dicta is not binding authority).
An interpretation of "for more than 12 months" in G.S. § 7B-1111(a)(2) that requires that this time period expire by the date the motion or petition to terminate is filed gives full support to the State's interests in preserving the family, while keeping in place a legislatively-established time frame for moving to termination if a child's return home proves untenable. See N.C. Gen.Stat. § 7B-1100 (2003) (legislative policy concerning termination of parental rights). Such an interpretation provides parents with at least twelve months' notice to correct the conditions which led to the removal of their children before being made to respond to a pleading seeking the termination of his or her parental rights. We conclude, consistent with Baker and principles of statutory construction, that "for more than 12 months" in G.S. § . 7B-1111(a)(2) means the duration of time beginning when the child was "left" in foster care or placement outside the home pursuant to a court order, and ending when the motion or petition for termination of parental rights was filed. While the child may have continued in foster care or other placement for some period after the date the motion or petition was filed, "more than *735 twelve months" must have expired by this date.
Where the "more than twelve months" threshold requirement in G.S. § 7B-1111(a)(2) did not expire before the motion or petition was filed, a termination on this basis cannot be sustained.[1] Indeed, this threshold requirement is related to the court's jurisdiction or authority to act. See, e.g., Bruce v. Bruce, 79 N.C.App. 579, 580, 339 S.E.2d 855, 856 (1986) (one year separation occurring before suit filed for divorce is "jurisdictional requirement[ ]"). It is, of course, a primary function of the juvenile tribunal to determine whether the grounds set forth in the motion or petition are proven by the requisite standards. Where the child has not been "removed" and "placed" for more than twelve months as of the filing date of the motion or petition to terminate, the juvenile court is necessarily unable to conclude that, as of that date, the minor child had been outside the home for "more than twelve months." This is in contrast to the nature and extent of the parent's reasonable progress, which is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights. See In re O.C. and O.B., 171 N.C.App. at 464, 615 S.E.2d at 396. We are mindful that, in many cases, the juvenile will have been placed outside of the home for the requisite period by the date of the termination hearing. However, we are equally mindful that our social service entities and juvenile courts should not, by virtue of filing a pleading setting forth G.S. § 7B-1111(a)(2) as a termination ground, forecast what the residential placement and circumstances of the juvenile will be for the balance of the twelve-month period that has not yet expired.
We next apply the foregoing principles to the facts of this case. Here, A.C.F. was separated from respondent in February 2002 pursuant to a voluntary "protection plan", not a court order. It is unclear from the record who cared for the child between February 2002 and 26 November 2002. The first non-secure custody order granting DSS custody of the child was not entered until 26 November 2002. Thus, there was no "placement" or "removal" within the meaning of G.S. § 7B-1111(a)(2) until 26 November 2002. The motion to terminate respondent's parental rights was filed 11 September 2003, less than twelve months after this time. As a consequence, the trial court erred by concluding A.C.F. had been "left in foster care [or placement outside the home] for more than 12 months as defined in G.S. 7B-1111(a)(2)." Indeed, A.C.F. was, at the time the motion to terminate parental rights was filed, two months away from circumstances under which G.S. § 7B-1111(a)(2) could be triggered and the parent made to respond to a motion or petition to terminate parental rights.
DSS nonetheless argues that, because unchallenged findings of fact from the termination of parental rights order establish that A.C.F. was "removed" from the home long before 26 November 2002, this Court must sustain the trial court's conclusions. DSS first points to finding of fact number 16: "The minor child was placed outside the mother's home [in February, 2002] pursuant to a voluntary placement agreement due to [the discovery by law enforcement officers of controlled substances in respondent's home]." However, the trial court merely used the term "placed" in finding of fact 16 as a generic, descriptive term to characterize what happened to A.C.F. in the aftermath of the discovery of controlled substances in respondent's home. And the fact that there was a "voluntary placement agreement" entered into by respondent in cooperation with a social services agency is, again, not the equivalent of placing the child in "foster care or placement outside the home" by virtue of a court order. DSS also relies upon unchallenged finding of fact number 11 in the termination of parental rights order, which incorporates the 4 March 2003 order adjudicating A.C.F. a neglected juvenile. In this earlier order on neglect, the trial court found that, as of 11 February 2003, A.C.F. "ha[d] been removed from the mother for more than eleven months...." Our review of the record suggests *736 that the trial court was not concluding that A.C.F. was "removed" from the home within the meaning of G.S. § 7B-1111(a)(2), but was using the term "remove" as a generic term to describe what occurred with the child. In short, this record completely belies any suggestion that A.C.F. was "removed" from respondent's care by court order at any point before 26 November 2002.
Finally, we observe that language from the prior opinion by this Court regarding this juvenile, In re A.F., COA03-1129 (N.C. Ct. App. 1 June 2004) (unpublished opinion), does not establish that A.C.F. was "placed" outside respondent's home for the requisite period before the motion for termination of parental rights was filed. In A.F., this Court stated, "the child was removed from respondent's custody in February 2002." However, this Court was not giving the term "removed" the import associated with the legal ground set forth in G.S. § 7B-1111(a)(2) (failure to make reasonable progress).
In the instant case, the findings of fact do not support the trial court's conclusion of law that A.C.F. had been "left in foster care [or placement] outside the home for more than twelve months ... as defined in N.C.G.S. § 7B-1111(a)(2)." Therefore, the order of termination must be
Reversed.
Judges McCULLOUGH and ELMORE concur.
NOTES
[1] We are not presented with circumstances where, e.g., DSS files a motion or petition setting forth G.S. § 7B-1111(a)(2)(failure to make reasonable progress) as a ground for termination before the expiration of the statutory period, but subsequently amends the motion or petition after the expiration of the period to reassert this termination ground.