IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-55

No. 232A20

Filed 23 April 2021

IN THE MATTER OF: T.M.L. and A.R.L.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 7 February 2020 by Judge Larry Leake in District Court, Mitchell County.[1] This matter was calendared for argument in the Supreme Court on 19 March 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Hockaday & Hockaday, P.A., by Daniel M. Hockaday, for petitioner-appellee Mitchell County Department of Social Services.*
>
> *Michelle FormyDuval Lynch for appellee Guardian ad Litem.*
>
> *Wendy C. Sotolongo, Parent Defender, by Annick Lenoir-Peek, Deputy Parent Defender, for respondent-appellant father.*

BERGER, Justice.

Respondent-father appeals from orders terminating his parental rights in the minor children "Troy" and "Ava."[2] The children's mother died during the course of the underlying juvenile proceedings and is not a party to this appeal. Based on our review

---

[1] Although the termination orders indicate they were filed in Yancey County, the entirety of the record otherwise confirms Mitchell County to be their county of origin.

[2] We use pseudonyms to protect the juveniles' privacy.

of the record and respondent-father's arguments, we hold the trial court properly considered respondent-father's progress up to the time of the termination hearing before concluding that he willfully failed to make reasonable progress to correct the conditions that led to the children's removal from the home. *See* N.C.G.S. § 7B-1111(a)(2) (2019). We further hold the trial court did not err by failing to consider whether poverty was the "sole reason" for respondent-father's failure to correct the conditions which led to removal. *See id*. Accordingly, we affirm the trial court's orders.

## I.    Facts and Procedural History

Petitioner Mitchell County Department of Social Services (DSS) obtained nonsecure custody of the children on September 14, 2017, and filed juvenile petitions alleging that the children were neglected and dependent juveniles. The trial court adjudicated the children to be neglected and dependent juveniles on January 11, 2018. The trial court found that the mother and respondent-father had a history of substance abuse and domestic violence which had previously resulted in the children being removed from the home and placed in DSS custody. At the time the petitions were filed, the mother had removed the children from their DSS-approved safety placement with their maternal grandmother. When DSS later found the mother with the children at a medical clinic, she was in a disoriented condition and had multiple syringes and empty pill bottles in her possession.

In its initial adjudication and disposition order entered on January 11, 2018,

the trial court ordered respondent-father to develop a case plan with DSS and delayed any visitation by respondent-father with the children "pending the signing of his DSS case plan and random clean drug screens." Respondent-father did not sign his DSS case plan until July 18, 2018. The case plan required him to address issues of substance abuse, domestic violence, parenting skills, and housing and employment stability.

¶ 4 On November 20, 2019, DSS filed petitions to terminate respondent-father's parental rights in Troy and Ava on the ground that he had willfully left them in an out-of-home placement for a period of at least twelve months without making reasonable progress to correct the conditions which led to their removal on September 14, 2017. *See* N.C.G.S. § 7B-1111(a)(2). Respondent-father failed to file an answer to the TPR petitions within the period prescribed by N.C.G.S. § 7B-1107 (2019). The trial court held a hearing on the petitions on January 3, 2020, and entered orders terminating respondent-father's parental rights in the children on February 7, 2020. Respondent-father gave timely notice of appeal to this Court pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019).

## II.   Adjudication Under N.C.G.S. § 7B-1111(a)(2)

¶ 5 Respondent-father now claims the trial court erred in adjudicating grounds for the termination of his parental rights for his willful failure to make reasonable progress under N.C.G.S. § 7B-1111(a)(2). As a general matter, we review a trial

court's adjudication under N.C.G.S. § 7B-1109

> to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law, with the trial court's conclusions of law being subject to de novo review on appeal. Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal. Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights.

*In re M.A.,* 374 N.C. 865, 869, 844 S.E.2d 916, 920 (2020) (cleaned up).

¶ 6      The statute at issue authorizes the trial court to terminate parental rights if the respondent-parent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). It further provides that "[n]o parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty." *Id.*

## A. Respondent-father's progress as of the termination hearing date

¶ 7      Respondent-father first claims the trial court erred by "fail[ing] to consider evidence of [his] progress through the date of [the] hearing" in determining whether he had made reasonable progress in correcting the conditions which led to the children's removal from the home. "While the trial court was correct in making

findings of fact about [his] lack of progress in the year prior to the filing of the petition to terminate parental rights," respondent-father contends the trial court "cannot discount the progress he made from August 2019 through the date of the hearing" on January 3, 2020.

¶ 8 "[A]n adjudication under N.C.G.S. § 7B-1111(a)(2) requires that a child be left in foster care or placement outside the home pursuant to a court order for more than a year at the time the petition to terminate parental rights is filed." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (cleaned up). However, the reasonableness of the parent's progress "is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." *Id.* (quoting *In re A.C.F.*, 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006)).

¶ 9 The trial court's findings of fact[3] refute respondent-father's assertion that the court failed to consider his progress up to the date of the termination hearing. Among the trial court's findings in support of its adjudication under N.C.G.S. § 7B-1111(a)(2) are the following:

> [B]y the time the respondent father signed his DSS case plan in July, 2018 his housing was inadequate for the [children] and had no running water; *the respondent father has made no progress in the [c]ourt's judgment* to remedy that problem; the respondent father testified *he could now remedy the housing problem* by either renting a home from $500–$600 per month or saving money for the purchase of

---

[3] The trial court's orders are identical in all respects pertinent to respondent-father's arguments on appeal.

a $60,000 home; the [c]ourt finds that approach by the *respondent father . . . does not provide any credible evidence to support he has any meaningful chance of securing suitable housing for the juvenile[s]*; as for employment, the respondent father has testified *he has worked "most of the time"* while not in prison; however, *the most recent employment he described began in November, 2019 at 35– 40 hours per week* is inconsistent with his other testimony in which he acknowledged "no, I had not been employed by someone all the time"; . . . the [c]ourt finds *the respondent father has not obtained and maintained the necessary employment* as required by the DSS case plan; . . . the respondent father testified *he has participated in Triple P Parenting [classes] although he has provided no documentation* regarding the same; . . . the respondent father has testified *he has called approximately 50 times to DSS* to express his concerns about the juvenile[s] and gain information regarding the case; *the [c]ourt finds that testimony not credible*; . . . that *DSS workers have regularly and consistently reached out to the respondent father* to let him know about the juvenile[s]; that the respondent father's contact with . . . DSS . . . or efforts to comply with the DSS case plan *has been essentially nonexistent*; that the *respondent father continues to reside in his residence* in Cleveland County with his girlfriend; [and] the same *still has no running water* . . . .

(Emphases added.) The suggestion that the trial court failed to consider respondent-father's circumstances as of the termination hearing has no merit.

¶ 10    Respondent-father also accuses the trial court of "discrediting any progress [he] made . . . in the six months leading up to the termination hearing." Although respondent-father makes no reference to the trial court's actual discussion of the issue—whether in open court at the termination hearing or in its written order—our own review of the record confirms the trial court's mistaken view of the time period

pertinent to an adjudication under N.C.G.S. § 7B-1111(a)(2).

¶ 11      After hearing the parties' evidence and closing arguments, the trial court announced as follows:

> The [c]ourt finds and accepts that it is charged by law with evaluating whether the Respondent-Father has made reasonable effort to accomplish the plan goals and to eliminate those barriers or matters which led to the children being taken into the custody of [DSS] in that 12-month time period between November 21, 2018, and November 20 of 2019, the time of the filing of this action. The [c]ourt has heard evidence, events both before . . . November 21, 2018, and after November 20, 2019, and makes findings relative to those events, only as they might shed light on the events and significance of what occurred in the year preceding the filing of the termination petition by [DSS].

¶ 12      The trial court included similar language in its written orders as part of finding of fact 10:

> [I]n evaluating whether the respondent father has made reasonable efforts to accomplish the plan goals and to eliminate the reasons the juvenile[s] came into DSS custody, the [c]ourt has focused on the barriers that led to the [children] being placed in DSS custody and that 12 month time period between 11/21/18 and 11/20/19 (when the TPR Petition[s] w[ere] filed); the [c]ourt has also heard evidence as to events, both before and after those dates, and made findings as to those events as may shed light on the events and significance [sic] in the year previous to the TPR Petition[s] being filed by Mitchell [County] DSS . . . .

By focusing on respondent-father's progress during the twelve-month period that preceded the filing of the TPR petitions, rather the entirety of his progress up to the

date of the termination hearing, the trial court applied an incorrect standard in adjudicating the existence of grounds for terminating respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(2). *See In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 (requiring consideration of parent's progress "up to the hearing on the motion or petition to terminate parental rights" (quoting *In re A.C.F.,* 176 N.C. App. at 528, 626 S.E.2d at 735)).

¶ 13        Our conclusion that the trial court erred does not end our inquiry. "An appellant must not only show error; he must show that the error was prejudicial." *Rudd v. Am. Fid. & Cas. Co.*, 202 N.C. 779, 782, 164 S.E. 345, 347 (1932). Moreover, this Court has long held that "a correct decision of the lower court will not be disturbed because the court gave a wrong or insufficient reason therefor." *Temple v. Temple*, 246 N.C. 334, 336, 98 S.E.2d 314, 315 (1957).

¶ 14        The record shows the trial court mistakenly believed that N.C.G.S. § 7B-1111(a)(2) required it to assess respondent-father's progress during the twelve-month period between November 2018 and November 2019. However, the trial court also made findings of fact that account for respondent-father's progress up to the date of the termination hearing—albeit only in order to "shed light on the events and significance of what occurred in the year preceding the filing of the termination petition[s]." Regardless of the trial court's purpose in making these findings, they are sufficient to permit a determination of the existence of grounds for terminating

respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(2) because they reflect the totality of respondent-father's progress in correcting the conditions which led to the children's removal from the home up to the date of the termination hearing. *See In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71.

¶ 15    This Court reviews de novo the issue of whether a trial court's adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a). *In re M.A.*, 374 N.C. at 869, 844 S.E.2d at 920. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re C.V.D.C.*, 374 N.C. 525, 530, 843 S.E.2d 202, 205 (2020) (alteration in original) (quoting *In re Appeal of Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

¶ 16    Here, conclusion of law 3 states as follows:

> [R]espondent father has willfully left the [children] in foster care or placement outside the home for a period of more than 12 months without showing to the satisfaction of the [c]ourt that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the [children] as prescribed by [N.C.G.S. §] 7B-1111(a)(2).

¶ 17    Reviewing this issue de novo, we hold the trial court's findings of fact support a conclusion that respondent-father had willfully failed to make reasonable progress *at the time of the termination hearing* to correct the conditions which led to the children's removal from the home.

¶ 18        At the time of the January 3, 2020 hearing, respondent-father had been provided more than twenty-seven months to correct the conditions which led to the children's removal from the home. In his brief, respondent-father provides the following description of his DSS case plan signed on July 18, 2018:

> The plan required him to take parenting classes due to his limited parenting experiences. Because of [his] prior substance use, he was expected to complete a CCA (Comprehensive Clinical Assessment) and follow recommendations, as well as comply with requests for drug screens from DSS. [He] was to obtain a steady job to support himself and the children as well as housing appropriate for himself and the children. He would address any domestic violence concerns and follow recommendations from the CCA and attend the Batterers Intervention Program ("BIP").

¶ 19        As found by the trial court, respondent-father failed to comply with the domestic violence component of his case plan by completing BIP. Respondent-father acknowledged he was dismissed from BIP for nonattendance in late 2018. Although he purported to have signed up for the program a second time in mid-November 2019, he testified he had completed just one-third of the required classes and would need "[t]hree or four months" of additional regular attendance in order to complete the program.

¶ 20        Respondent-father argues that his failure to complete the BIP "matters only if he had not addressed the cause of the domestic violence concerns" arising from his history of domestic violence with the children's mother, which included a 2017

conviction for assault on a female against her. This argument has no merit. The trial court was empowered to require respondent-father to obtain treatment for domestic violence as a condition of his case plan. *See In re D.L.W.*, 368 N.C. 835, 845, 788 S.E.2d 162, 168 (2016) ("Subdivision 7B-904(d1)(3) authorizes the trial court to order that a parent '[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent, guardian, custodian, or caretaker.' " (alteration in original) (quoting N.C.G.S. § 7B-904(d1)(3) (2015))). Moreover, respondent-father's failure to complete the services prescribed by his case plan is probative of his lack of reasonable progress. *See In re D.L.W.*, 368 N.C. at 844, 788 S.E.2d at 168 (holding "the Court of Appeals incorrectly concluded that respondent's failure to comply with these [case plan] requirements could not justify the termination of her parental rights" pursuant to N.C.G.S. § 7B-1111(a)(2)).

¶ 21 Respondent-father's observation that he and the children's mother "were no longer together" at the time of the termination hearing is undoubtedly true, given the mother's death in 2017. However, the death of the children's mother did not absolve respondent-father of obtaining the treatment prescribed by his case plan to address his domestic violence history. *See generally In re J.S.*, 374 N.C. at 815–16, 845 S.E.2d at 71 (requiring only "a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the

child's removal from the parental home" in order for noncompliance to support termination under N.C.G.S. § 7B-1111(a)(2) (cleaned up) (quoting *In re B.O.A.*, 372 N.C. 372, 385, 831 S.E.2d 305, 314 (2019))). Nor was respondent-father relieved of complying with his case plan by the fact that DSS offered no evidence of additional acts of domestic violence between respondent-father and his current girlfriend. *See id.*

¶ 22      The trial court also found respondent-father had "made no progress" to "obtain housing appropriate for himself and the children" as required by his case plan. The evidence showed respondent-father and his girlfriend had resided since 2018 in a 350-square-foot structure without bedrooms or plumbing—which DSS and the trial court had found to be inadequate.

¶ 23      As for stable employment, the trial court found respondent-father reported having full-time employment with a construction company since mid-November 2019, a period of less than two months at the time of the hearing. Respondent-father characterized his previous employment as "fairly steady" and involving "home improvements and side jobs." However, he acknowledged having been convicted of possession of a stolen firearm in March 2019, which resulted in the revocation of his probation for his 2017 conviction for assault on a female and five months of incarceration from March to July 2019. In addition, the trial court found he "has not obtained and maintained the necessary employment as required by the DSS case

plan" because respondent-father admitted to lacking stable employment before DSS filed the petitions to terminate his parental rights and provided no documentation of his employment or income.

¶ 24        Respondent-father suggests his failure to maintain stable employment "was an important factor only if his lack of employment flowed from or led to his substance abuse." To the contrary, as explained in his case plan, stable employment was important in order to allow respondent-father "to be able to support himself and the children."

¶ 25        Regarding the substance abuse component of his case plan, the trial court found respondent-father obtained a CCA on August 12, 2019, but did so "unbeknownst to DSS" and "after DSS was relieved" of reunification efforts. Although the DSS social worker received a copy of the CCA at the termination hearing,[4] she testified she had not previously seen the document, and respondent-father had provided no documentation indicating his compliance with the CCA's recommendations as required by his case plan. Respondent-father did not claim to have complied with the CCA's recommendations during his testimony at the termination hearing.

¶ 26        The trial court found respondent-father tested positive for marijuana at a drug

---

[4] The CCA was not admitted into evidence at the termination hearing, and no witness described its contents.

screen performed on a court date in October 2018 and refused additional drug screens requested by DSS in October and November 2018, after which the trial court relieved DSS of reunification efforts. The trial court also found respondent-father refused a drug screen requested by DSS in December 2018, advising the social worker that "he did not have the financial means to comply."

¶ 27　　Respondent-father does not contest these findings and in fact "stipulate[s] that he tested positive for marijuana when tested twice in court and admitted he would have tested positive a third time."[5] He instead implies that his continued drug use while the children were in DSS custody is insignificant because "he was not caring for the children at the time." Respondent-father likewise downplays his refusal to submit to DSS's drug screens, citing the fact that he was on criminal probation throughout the course of the juvenile proceedings and submitting to drug screens was a requirement of his probation. Respondent-father contends DSS presented no evidence contradicting his testimony "that his drug test results with probation were negative as supported by the fact that he was not violated for using drugs while on probation."

¶ 28　　We offer no comment concerning the relevance of respondent-father's success in satisfying the requirements of his probation as proof of his progress in addressing

---

[5] During his testimony at the termination hearing, respondent-father admitted he attended previous court hearings while drunk.

the issue of substance abuse while simultaneously stipulating to using marijuana and to submitting to multiple positive drug screens during the same period. The trial court could reasonably construe respondent-father's positive drug screens and refusal of requested screens as noncompliance with this component of his case plan. Moreover, it appears respondent-father never submitted the negative drug screens required to be allowed visitation with the children as provided in the initial adjudication and disposition order.

¶ 29     As for the parenting skills portion of his case plan, respondent-father appears to take issue with the trial court's finding that he "testified he has participated in Triple P Parenting [classes] although he has provided no documentation regarding the same." One DSS social worker acknowledged having "been given a copy of a certificate for a Triple P online parenting course with today's date" on the day of the hearing, indicating respondent-father's completion of the course. However, the transcript does not reflect that either DSS or respondent-father tendered this document to the trial court as evidence. We assume *arguendo* that, consistent with the testimony from the termination hearing, respondent-father had not completed any parenting classes at the time DSS filed its TPR petitions in November 2019 but had recently completed an online parenting course at the time of the termination hearing. Accordingly, we disregard the trial court's finding to the contrary for purposes of our review. *See In re S.D.*, 374 N.C. 67, 83, 839 S.E.2d 315, 328 (2020).

¶ 30    The trial court found that "[t]he failure of the respondent father to comply with the DSS case plan[ ] and eliminate the reasons the [children] came into DSS custody demonstrates his failure to make reasonable progress to correct the conditions leading to the removal of the [children] from his home." We have held that "parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)" provided that "the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home." *In re B.O.A.*, 372 N.C. at 384, 831 S.E.2d at 313–14.

¶ 31    Here, respondent-father's failure to meaningfully engage with the case plan objectives related to substance abuse, domestic violence, and suitable housing, despite being given more than twenty-seven months to do so, supports the trial court's conclusion that he willfully failed to make reasonable progress under N.C.G.S. § 7B-1111(a)(2). Respondent-father's claim that he had "addressed the areas of concern listed in his case plan, even if the trial court did not approve of the exact manner or timeliness with which he did so" is not borne out by the record or by the trial court's uncontested findings.

¶ 32    Although the record shows respondent-father made some last-minute attempts to comply with the case plan by the time of the termination hearing—including

completing a CCA, completing an online parenting course, obtaining full-time employment, and reenrolling in domestic violence treatment—he still had not completed domestic violence treatment or addressed his substance abuse issues, and he remained in housing unsuitable for the children. Respondent-father's partial steps—undertaken after DSS had filed petitions to terminate his parental rights and two years or more after the children's removal from the home—are insufficient to constitute reasonable progress under N.C.G.S. § 7B-1111(a)(2).[6] *See e.g., In re I.G.C.*, 373 N.C. 201, 206, 835 S.E.2d 432, 435 (2019) (affirming adjudication under N.C.G.S. § 7B-1111(a)(2) when the "respondent-mother waited too long to begin working on her case plan and that, as a result, she had not made reasonable progress toward correcting the conditions that led to the children's removal by the time of the termination hearing").

---

[6] Respondent-father asserts he "was not required to have fully complied with his case plan by the time of the termination hearing" in order to meet the "reasonable progress" standard in N.C.G.S. § 7B-1111(a)(2). As a statement of general principle, this is true. *See In re B.O.A.*, 372 N.C. at 385, 831 S.E.2d at 314 (cautioning that "a trial judge should refrain from finding that a parent has failed to make reasonable progress in correcting those conditions which led to the removal of the juvenile simply because of his or her failure to fully satisfy all elements of the case plan goals" (cleaned up) (quoting *In re J.S.L.*, 177 N.C. App. 151, 163, 628 S.E.2d 387, 394 (2006))). However, the parent's progress must be "reasonable" under the circumstances, including the amount of time the parent has enjoyed to correct the conditions at issue. *See In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 (2020) ("A respondent's prolonged inability to improve [his or] her situation, despite some efforts in that direction, will support a finding of willfulness regardless of [his or] her good intentions, and will support a finding of lack of progress sufficient to warrant termination of parental rights . . . ." (cleaned up) (quoting *In re J.W.*, 173 N.C. App. 450, 465–66, 619 S.E.2d 534, 545 (2005))).

**B. The poverty exception in N.C.G.S. § 7B-1111(a)(2)**

Respondent-father also challenges the trial court's adjudication on the ground that the court "failed to consider whether poverty was a factor in his inability to complete his case plan." He bases his argument on the qualifying language that appears at the conclusion of N.C.G.S. § 7B-1111(a)(2): "No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty." N.C.G.S. § 7B-1111(a)(2) (2019).

However, respondent-father did not file an answer to the TPR petitions, and so he did not assert poverty or any other potential defense to the grounds for termination alleged under N.C.G.S. § 7B-1111(a)(2). *See generally* N.C.G.S. § 7B-1107 (2019) (authorizing the trial court upon a parent's failure to file a responsive pleading to "issue an order terminating all parental and custodial rights of that parent with respect to the juvenile; provided the court shall order a hearing . . . on [the facts alleged in] the petition or motion"). Nor did respondent-father raise the issue of poverty to the trial court during the termination hearing as a potential basis to avoid termination of his parental rights.

"Failure to raise an affirmative defense in the pleadings generally results in a waiver thereof." *Robinson v. Powell*, 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998); *see also* N.C.G.S. § 1A-1, Rule 8(c) (2019). However, we have not previously classified a parent's poverty as an affirmative defense and decline to do so here.

¶ 36    The precise nature of respondent-father's argument is unclear. A portion of his brief may be fairly read as asserting that an adjudication under N.C.G.S. § 7B-1111(a)(2) requires a finding by the trial court to the effect that poverty is not the cause of the parent's failure to correct the conditions which led to the children's removal. In fact, respondent-father "challenges the trial court's failure to make a required statutory finding." In support of this argument, respondent-father quotes the poverty exception in N.C.G.S. § 7B-1111(a)(2) and asserts that "[t]he trial court's failure to address this factor at all requires this Court to reverse the termination order[s]." Elsewhere, however, respondent-father appears to contend the trial court failed to make findings evincing that it considered the evidence in light of the statutory language barring termination of parental rights under N.C.G.S. § 7B-1111(a)(2) based solely on the parent's inability to care for the children on account of the parent's poverty .

¶ 37    To the extent respondent-father argues that N.C.G.S. § 7B-1111(a)(2) requires an affirmative finding by the trial court that poverty is not the sole reason of a parent's inability to care for a child as an element or "factor" of the adjudication, we find no merit to his argument.

¶ 38    Subsection (a)(2) begins by defining one of the eleven grounds authorized by N.C.G.S. § 7B-1111 for terminating parental rights:

> The parent has willfully left the juvenile in foster care or
> placement outside the home for more than 12 months

> without showing to the satisfaction of the court that
> reasonable progress under the circumstances has been
> made in correcting those conditions which led to the
> removal of the juvenile.

N.C.G.S. § 7B-1111(a)(2). It concludes with the following qualifier: "No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty." *Id.*

¶ 39    The poverty exception in N.C.G.S. § 7B-1111(a)(2) does not define the "elements" of this statutory ground for terminating parental rights. The exception instead establishes what is *not* a willful failure to make reasonable progress under the circumstances for purposes of N.C.G.S. § 7B-1111(a)(2). Therefore, to the extent respondent-father "challenges the trial court's failure to make a required statutory finding" about poverty or its effect on his ability to care for the children, his argument is overruled.

¶ 40    To the extent respondent-father instead complains that the trial court's findings fail to reflect its consideration of the poverty exception in N.C.G.S. § 7B-1111(a)(2), we conclude his argument is without merit.

¶ 41    Because the statutory poverty exception does not create an affirmative element or factor required to support an adjudication under N.C.G.S. § 7B-1111(a)(2), the trial court has no obligation to make specific findings on the issue in the absence of evidence tending to show that poverty is the sole reason for a parent's inability to care for the child.

¶ 42        A review of the transcript from the termination hearing shows respondent-father did not claim and the trial court heard no evidence that poverty was the "sole reason" respondent-father failed to correct the conditions which led to the children's removal from the home. N.C.G.S. § 7B-1111(a)(2). Respondent-father did not purport to provide an accounting of his income and expenses during the period between September 2017 and January 2020[7], nor did he testify he was financially unable to care for his children or comply with his case plan. His counsel likewise made no mention of poverty in his motion to dismiss at the conclusion of the evidence or in his closing argument to the trial court.

¶ 43        Respondent-father contends the trial court should have considered whether poverty was "*a factor*" or "*an issue* that affected [his] ability to remedy the conditions causing the children's removal" or "*may have interfered* with [his] ability to" do so. None of these formulations are consistent with the statutory standard. We conclude the trial court's findings accurately reflect the evidence of respondent-father's circumstances and fully support the trial court's determination that his lack of progress was willful. *Compare In re N.K.*, 375 N.C. 805, 816, 851 S.E.2d 321, 330 (2020) ("Although the record contains evidence tending to show that respondent-mother had experienced financial difficulties, a careful analysis of the record shows

---

[7] Respondent-father stated he was currently earning $400 to $450 per week at the job he had obtained in mid-November 2019. He described his previous employment as "fairly steady" but did not provide specific information about his earnings.

that respondent-mother's inability to care for [the child] did not stem solely from her poverty."), *with In re S.D.*, 243 N.C. App. 65, 73, 776 S.E.2d 862, 867 (2015) ("The only other factor which could support the trial court's conclusion [that respondent failed to make reasonable progress] was respondent's meager income, but again, poverty alone cannot be a basis for termination of parental rights.").

### III.   Conclusion

The trial court's findings of fact support its conclusion that grounds exist for the termination of respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2). Respondent-father does not contest the trial court's conclusion under N.C.G.S. § 7B-1110(a) that termination of his parental rights was in the children's best interests. *See* N.C.G.S. § 7B-1110(a) (2019). Accordingly, we affirm the trial court's orders.

AFFIRMED.