An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-656

Filed 1 April 2026

Sampson County, Nos. 24JA000098-810, 25CV001468-810

IN THE MATTER OF: K.A., minor child.

Appeal by Respondent-Mother from judgment and orders entered 31 March 2025 by Judge Mario M. White in Sampson County District Court. Heard in the Court of Appeals 11 March 2026.

> *Mary McCullers Reece and Warrick & Bradshaw, P.A., by Frank L. Bradshaw, for Petitioner-Appellee Sampson County Department of Social Services.*
>
> *Parent Defender Annick Lenoir-Peek, by Assistant Parent Defender Jacky Brammer, for Respondent-Appellant Mother.*
>
> *Michelle FormyDuval Lynch for guardian ad litem.*

GRIFFIN, Judge.

Respondent-Mother appeals the trial court's Review Order and Order Granting Custody and Releasing Jurisdiction in Case No. 24JA000098-810. She also appeals the resulting Child Custody Order Pursuant to N.C. Gen. Stat. § 7B-911 Civil Custody Order in Case No. 25CV001468-810. She argues the trial court erred because it had

to place the case on the permanency planning track but instead placed the case on the review track and gave Respondent-Father full custody of their minor child, Kourtney,[1] without permanency planning hearings. We disagree and affirm the trial court.

## I.    Factual and Procedural Background

On 19 July 2024, Sampson County Department of Social Services ("DSS") filed a juvenile petition alleging Kourtney was neglected. This petition alleged, in part, on 18 July 2023, DSS "received a Child Protective Services report regarding Neglect: Domestic Violence, Substance Abuse and Injurious Environment of the Juveniles," Kourtney and her half-sibling.[2] Kourtney disclosed she did "not feel safe with Respondent-Mother's boyfriend," a registered sex offender whom both Kourtney and her half-sibling disclosed had supervised them. On 31 July 2023, "a Temporary Safety Provider moved into the home to supervise all contact between [] Respondent[-]Mother and the Juveniles." When that attempt failed, "the Juveniles were then placed in a Temporary Safety Provider's home." On 31 July 2024, Kourtney moved in with Respondent-Father.

On 22 October 2024, the trial court held its adjudication and dispositional hearings and the parents, guardian ad litem, and DSS stipulated the following:

---

[1] Kourtney is a pseudonym used by each party to protect the identity of the minor child who is the subject of this action. *See* N.C. R. App. P. 42(b).

[2] Kourtney's sibling's case is not part of this appeal.

1. That, on July 18, 2023, [DSS] received a Child Protective Services report regarding Neglect: Domestic Violence, Substance Abuse and Injurious Environment of the Juveniles, [Kourtney] and [Kourtney's sibling].

. . . .

3. That, Respondent[-]Parents to the Juvenile [Kourtney] are [Respondent-Father] and [Respondent-Mother].

4. That, on July 18, 2023, the Juveniles disclosed that they do not feel safe with Respondent[-]Mother['s] Boyfriend Donald Watts.

5. That, [] [Watts] is a registered sex offender and should not be unsupervised with children.

6. That, the Juveniles disclosed they have been supervised by [Watts].

7. That, on July 18, 2023, [t]he Juveniles disclosed that there was physical[ ]and verbal altercation between Respondent[-]Mother and [Watts] where the Juveniles had to flee.

8. That, on July 17, 2023 the Juveniles disclosed that [] Respondent[-]Mother and [Watts] fought.

9. [] Respondent[-]Mother disclosed to DSS that she did a line of methamphetamine on July 13, 2023.

10. That on July 25, 2023, Respondent[-]Mother refused to drug screen for DSS.

11. That on July 26, 2023, Respondent[-]Mother filed a no contact order on [Watts].

12. That on July 31, 2023, the Juveniles disclosed that they have seen [Watts] at the home multiple times.

13. That, the Juveniles disclosed that [] Respondent[-]

Mother told the Juveniles to lie to DSS about [Watts] coming to the home.

14. That on July 31, 2023, a Temporary Safety Provider moved into the home to supervise all contact between [] Respondent Mother and the Juveniles.

15. That, on August 8, 2023 [] the Juveniles disclosed to DSS that [] Respondent[-]Mother has been alone with the Juveniles and the Temporary Safety Provider has not been in the home watching them.

16. That, the Juveniles were then placed in a Temporary Safety Provider's home.

17. That, [Kourtney's sibling] disclosed to DSS that he has been choked by [Watts] while Respondent[-]Mother was in the car.

18. That, [Watts] has criminal charges of assault on a female and stalking related to [] Respondent[-]Mother while the children were present.

19. That, [Watts] assaulted Respondent[-]Mother on April 20, 2023, and the Juveniles were present.

20. Other facts and circumstances to be presented at the hearing on the merits of this petition.

On 25 November 2024, the trial court filed an order adjudicating Kourtney neglected based on the stipulated facts. That same day, the trial court filed its "Order on Disposition and Order Granting Temporary Custody," ordering "the temporary legal and primary physical care, custody, and control of [Kourtney]" to Respondent-Father, with whom she had been residing since 31 July 2024, and supervised visits with Respondent-Mother. The trial court also ordered "the first review hearing"

pursuant to N.C. Gen. Stat. § 7B-906.1 on 16 January 2025. On 24 February 2025, after the 16 January 2025 review hearing, the trial court filed an initial review order continuing Respondent-Father's care, custody, and control of Kourtney and setting a review hearing on 11 March 2025.

On 11 March 2025, the trial court held its review hearing, which Respondent-Mother did not attend. After reviewing the evidence presented, the trial court ordered "the care, custody, and control" of Kourtney to Respondent-Father, terminated the Juvenile Court jurisdiction, and ordered "a civil order of custody shall be established pursuant to the requirements of N.C. Gen. Stat. §[ ]7B-911." The trial court issued the section 7B-911 Custody Order on 31 March 2025.

Respondent-Mother timely appealed.

## II. Analysis

The sole issue presented to the Court by Respondent-Mother is whether "the [trial] court infringed on [Respondent-Mother's] custodial rights and decision-making authority over Kourtney by removing her" when the trial court "placed the case on the review track and gave Respondent-Father full custody of Kourtney without permanency planning hearings." We hold the trial court did not err.

Before we begin our review, we address the GAL's argument that this appeal is barred by collateral estoppel. "The doctrine of collateral estoppel operates to preclude parties 'from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.'" *In re Wheeler*, 87

N.C. App. 189, 194, 360 S.E.2d 458, 461 (1987) (quoting *King v. Grindstaff,* 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973)). However, "[c]ollateral estoppel, or issue preclusion, applies to a subsequent suit between the parties on a different cause of action." *Wilson v. Watson*, 136 N.C. App. 500, 501–02, 524 S.E.2d 812, 813 (2000) (citation omitted). This appeal does not arise from a different cause of action between DSS, the GAL, and Respondent-Mother; the appeal stems from the same petition DSS filed regarding Kourtney. *See Wheeler*, 87 N.C. App. at 191–92, 360 S.E.2d at 460 (affirming the trial court's application of the doctrine of collateral estoppel estopping parents "from relitigating the prior abuse and neglect adjudications" in a subsequent petition to terminate parental rights). Therefore, collateral estoppel does not apply here.

Because this is an issue of statutory interpretation we review de novo. *Proposed Assessments of Additional Sales & Use Tax for Period of Jan. 1, 1994 Through Nov. 30, 1996 by Sec'y of Revenue v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003) ("Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court." (citation omitted)). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute." *In re B.O.A.*, 372 N.C. 372, 380, 831 S.E.2d 305, 311 (2019) (quoting *Diaz v. Div. of Soc. Servs. & Div. of Med. Assistance, N.C. Dep't of Health & Human Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006)). Further, "[w]hen the meaning is clear from the statute's plain

language, . . . 'judicial construction of legislative intent is not required.'" *In re J.E.B.*, 376 N.C. 629, 633, 853 S.E.2d 424, 428–29 (2021) (quoting *Winkler v. N.C. State Bd. of Plumbing*, 374 N.C. 726, 730, 843 S.E.2d 207, 210 (2020)).

The statute at issue here is N.C. Gen. Stat. § 7B-906.1(a). It reads:

> (a) The court shall conduct a review or permanency planning hearing within 90 days from the date of the initial dispositional hearing held pursuant to G.S. 7B-901. Review or permanency planning hearings shall be held at least every six months thereafter. *If custody has not been removed from a parent, guardian, or custodian at initial disposition, the hearing shall be designated as a review hearing. If custody has been removed from a parent, guardian, or custodian at initial disposition, the hearing shall be designated as a permanency planning hearing.*

N.C. Gen. Stat. § 7B-906.1(a) (2025) (emphasis added). Thus, although Respondent-Mother's argument is based on the trial court's awarding "full custody" of Kourtney to Respondent-Father, section 7B-906.1(a)'s text demands we look back to the initial disposition orders and the facts surrounding the trial court's decision there. [3]

---

[3] Respondent-Mother's notice of appeal says the following:

> COMES NOW [] Respondent[-Mother] pursuant to N.C.G.S. 7B-1001(a)(4), and hereby gives Notice of Appeal to the Court of Appeals of North Carolina from the Order: Review Order and Order Granting Custody and Releasing Jurisdiction that changed custody of the above minor child that were filed on March 31, 2025 and the resulting Child Custody Order Pursuant to N.C.G.S. § 7B-911 Civil Custody Order filed in Smith v. Bass in file no. 25 CVD 001468-810 filed on March 31, 2025.

While the time to appeal the initial disposition and adjudication has lapsed, *see* N.C. Gen. Stat. § 7B-1001(a)(3) (2025) ("In a juvenile matter under this Subchapter, only the following final orders may be appealed directly to the Court of Appeals: . . . . (3) Any initial order of disposition

Here, the record reflects Kourtney moved in with Respondent-Father on 31 July 2024. This was months prior to the 22 October 2024 adjudication and dispositional hearings at which, in its corresponding order filed 25 November 2024, the trial court adjudicated Kourtney neglected and ordered "the temporary legal and primary physical care, custody, and control of [Kourtney]" to Respondent-Father. The statutory text of section 7B-906.1(a) is clear and unambiguous when it states "[i]f custody has not been removed from a parent, guardian, or custodian *at initial disposition*, the hearing shall be designated as a review hearing." N.C. Gen. Stat. § 7B-906.1(a) (emphasis added). We have previously held the reading "'*removal* of the juvenile' . . . to refer only to placements and removals required by court order is in keeping with the common usage of these words in statutes throughout the Juvenile Code where the juvenile court has asserted jurisdiction over children." *In re A.C.F.*, 176 N.C. App. 520, 525, 626 S.E.2d 729, 733 (2006) (emphasis in original) (citations omitted). While the trial court did grant temporary custody to Respondent-Father, with whom Kourtney was already residing, in the initial disposition hearing and corresponding order, this was simply a continuation of the status quo. The trial court did not by its order remove Kourtney from Respondent-Mother. Kourtney was

n and the adjudication order upon which it is based."); N.C. Gen. Stat. § 7B-1001(b) (2025) ("Notice of appeal and notice to preserve the right to appeal shall be given in writing by a proper party as defined in G.S. 7B-1002 and shall be made within 30 days after entry and service of the order in accordance with G.S. 1A-1, Rule 58."), Respondent-Mother timely appealed the 31 March 2025 Review Order and Order Granting Custody and Releasing Jurisdiction and the resulting Child Custody Order Pursuant to N.C.G.S. 7B-911 Civil Custody Order; thus, pursuant to section 7B-906.1(a) we must look back at the initial disposition to review the appealed orders and judgment.

already not within Respondent-Mother's custody, not only when Kourtney was placed with Respondent-Father but also previously when Kourtney and her sibling were placed in a Temporary Safety Provider's home. These both occurred without a court order with the latter occurring prior to DSS filing the petition for abuse, neglect, and dependency on 19 July 2024. Thus, because Kourtney was not removed from Respondent-Mother's custody "at initial disposition," section 7B-906.1(a) mandated "the hearing shall be designated as a review hearing."

Respondent-Mother argues "[t]he record is silent as to whether Kourtney moving from Respondent-Mother's home to eventually winding up in Respondent-Father's home in July 2024 was voluntary or not," and "[b]y the initial disposition order in October 2024, any potential voluntariness or voluntary agreement was superseded by the [trial] court's compulsory order that reduced [Respondent-Mother]'s custody, care, and control over Kourtney to only one supervised hour every other week."[4] However, regardless of the record's silence on the voluntariness, the trial court could not, under the facts presented in this case, remove "custody, care, and control" by its order from Respondent-Mother because Kourtney had not been in the custody, care, and control of Respondent-Mother for over a year before the initial

---

[4] Respondent-Mother also refers to a DSS form for support she still retained custody rights despite Kourtney's absence from her custody; however, this form does not appear in the record, nor does Respondent-Mother claim she signed this form or that it was utilized in this case. Therefore, we decline to review this form.

disposition and, then, throughout the remainder of the case through the trial court's grant of full custody to Respondent-Father.[5]

Because "custody ha[d] not been removed from a parent, guardian, or custodian at initial disposition" in this case, the trial court did not err in placing this case on the review track pursuant to section 7B-906.1(a) and thus did not err in giving Respondent-Father full custody of Kourtney without permanency planning hearings.

## III.    Conclusion

We affirm the trial court's Review Order and Order Granting Custody and Releasing Jurisdiction in Case No. 24JA000098-810 as well as the resulting Child Custody Order Pursuant to N.C. Gen. Stat. § 7B-911 Civil Custody Order in Case No. 25CV001468-810.

AFFIRMED.

Judges HAMPSON and STADING concur.

Report per Rule 30(e).

---

[5] This does not call into doubt the trial court's ability to remove custody from a parent or even that where the facts differ from the case at issue, the permanency planning track would be required instead of the review hearing track.