IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-40

No. 155A21

Filed 18 March 2022

IN THE MATTER OF: L.D., A.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from orders entered on 4 February 2021 by Judge Christopher Rhue in District Court, Scotland County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Quintin Byrd for petitioner-appellee Scotland County Department of Social Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Wendy C. Sotolongo, Parent Defender, and Jacky Brammer, Assistant Parent Defender, for respondent-appellant mother.*

NEWBY, Chief Justice.

Respondent, the mother of L.D. (Larry) and A.D. (Amy),[1] appeals from the trial court's order terminating her parental rights. After careful review, we affirm.

Larry was born on 16 November 2016.[2] The Scotland County Department of

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading.

[2] Only two children, Larry and Amy, are at issue in this case. There are five children in total. Respondent is not the mother of the biological father's oldest child, J.B. Respondent

Social Services (DSS) received a report on 7 February 2018 that Larry's eleven-week-old sibling, Lisa, was admitted into the emergency room at Scotland Memorial Hospital. She was diagnosed with acute bleeding on the brain and a subdural hematoma. Lisa also had fractures on her ribs, which were healing, along with other injuries, including a circular burn the size of a cigarette on her lower right leg. Respondent and the father[3] claimed that Lisa was injured by falling off the couch. Medical professionals at the hospital, however, believed this explanation was "inconsistent with the type of injuries that [Lisa] ha[d] sustained." Later testing "revealed retinal hemorrhaging in both eyes, indicative of Shaken Baby Syndrome." On 9 February 2018, DSS filed a petition alleging that Larry was a neglected juvenile. Larry was initially placed in kinship care with his maternal grandmother.

¶ 3          On 16 February 2018, the trial court entered an order granting DSS nonsecure custody of Larry. That same day, DSS filed an amended juvenile petition adding allegations that the father had shaken Lisa and that he was incarcerated on charges of felonious child abuse. DSS further alleged that Larry's maternal grandmother "was allowing [Larry to have] contact with the respondent mother in violation of a safety assessment," and that respondent was incarcerated on charges of misdemeanor

and the children's biological father are the parents of, in order: L.D. (Larry); the sibling who was abused (Lisa); A.D. (Amy); and the last child born on 9 October 2019 (Alex).

[3] The trial court also terminated the parental rights of the father to both Larry and Amy. The father, however, did not appeal the trial court's order and is not a party to this appeal.

larceny and shoplifting. Respondent tested positive for cocaine, benzodiazepines, and methadone on 23 March, 9 April, and 11 June 2018. Respondent refused drug screens on 23 April, 3 May, 30 May, 27 June, and 27 July 2018. On 13 June 2018, respondent "made a case plan with DSS," but did not sign it. That plan

> found that the issues that needed to be addressed were substance abuse and recommended treatment, appropriate supervision and discipline, including parenting classes, establishing a stable home and employment, cooperating with [DSS], and maintaining contact with [DSS] at least once per week, and visiting the juvenile a[nd] supporting placement of the juvenile.

¶ 4        Amy was then born on 7 October 2018; her father is the same as Larry's father. On 9 October 2018, DSS filed a juvenile petition alleging that Amy was neglected and obtained nonsecure custody of Amy. The petition alleged that Amy tested positive for cocaine at birth and respondent tested positive for cocaine and methadone when Amy was born. Respondent admitted to using cocaine two days before the delivery. DSS also alleged respondent "ha[d] not been compliant with completing needs identified on her case plan, and continue[d] to test positive for illegal substances."

¶ 5        Following a hearing on 18 October 2018, the trial court determined with the parties' consent that Larry was neglected. This determination was memorialized in an adjudication order entered on 25 February 2019 in which respondent stipulated to facts consistent with the allegations in DSS's amended petition. In a separate disposition order, the trial court directed that Larry remain in DSS custody.

¶ 6          Following a hearing on 10 January 2019, the trial court entered a second consent adjudication order on 25 February 2019 determining that Amy was neglected. The court also found in a separate disposition order that respondent had failed to address any of the issues identified in her case plan. Respondent had again tested positive for cocaine on 4 January 2019. The trial court ruled that further reunification efforts would be unsuccessful and inconsistent with Amy's needs based on Lisa's non-accidental injuries and the parents' failure to address the issues that led to Amy's removal. The trial court ordered that Amy remain in DSS custody and relieved DSS of further reunification efforts. The court also discontinued respondent's visits with Amy pending guidance from a therapist about the appropriateness of visitation. After a review hearing on 10 January 2019, the trial court entered a review order in Larry's case on 25 February 2019. The trial court found reunification efforts would also be unsuccessful and inconsistent with Larry's needs. The trial court ordered that Larry remain in DSS custody, relieved DSS of further reunification efforts, and discontinued respondent's visits with Larry.

¶ 7          Following a permanency planning hearing on 7 February 2019, the trial court entered orders on 27 February 2019 setting the permanent plan for the children as custody with a relative with a concurrent plan of reunification. The trial court held another permanency planning hearing on 28 March 2019 and entered review orders on 6 June 2019. The trial court found that respondent was enrolled at the Black

Mountain inpatient substance abuse treatment center and was scheduled to complete the program in May 2019. The trial court further found that respondent still was not employed, did not have stable housing, and had not enrolled in parenting classes. The trial court changed the permanent plan to adoption with a concurrent plan of reunification and ordered DSS to proceed with the plan.

¶ 8        The trial court held another permanency planning hearing on 30 May 2019 and entered review orders on 24 June 2019. The trial court found that respondent completed the Black Mountain program on 3 May 2019 but had not participated in any additional substance abuse treatment. Respondent was pregnant with another child as the possible result of her continuing relationship with the father, and she had not contacted DSS. The trial court found that respondent "spent the Memorial Day Weekend with [the father] at a hotel in Myrtle Beach, South Carolina."

¶ 9        After the next permanency planning hearing on 25 July 2019, in orders entered on 28 August 2019, the trial court found that "[s]ince the last permanency planning hearing, the respondent mother has had no contact with DSS" and was not present for the hearing. The trial court also found that respondent had not provided any financial support for the children. The trial court again ordered that respondent not have visitation with the children "due to the severity of injuries suffered by the juvenile's sibling" and because respondent was "failing to successfully address the issues which led to removal." Following a permanency planning hearing on 19

December 2019, the trial court entered orders finding that respondent still had no contact with DSS; had not provided financial support for her children; had given birth to Alex in October of 2019, who tested positive for cocaine; and was "residing in a Drug Addiction Treatment Center in Smithfield, North Carolina." The court ordered DSS "to proceed with [the] permanent plan" of adoption for both children.

¶ 10 On 24 January 2020, DSS filed petitions to terminate respondent's parental rights to Larry and Amy on the grounds of neglect, s*ee* N.C.G.S. § 7B-1111(a)(1) (2021); willfully leaving the children in a placement outside the home while failing to make reasonable progress, *see id.* § 7B-1111(a)(2) (2021); and willful abandonment, *see id.* § 7B-1111(a)(7) (2021). In orders filed on 4 February 2021, the trial court determined that grounds existed to terminate respondent's parental rights under N.C.G.S. §§ 7B-1111(a)(1), (2), and (7). The trial court concluded that terminating respondent's parental rights was in the children's best interests. *See id.* § 7B-1110(a) (2021). Accordingly, the trial court terminated respondent's parental rights to Larry and Amy. Respondent appeals.

¶ 11 On appeal respondent contends the trial court erred by determining grounds existed to terminate her parental rights. Respondent argues several of the trial court's findings of fact are not supported by clear, cogent, and convincing evidence. Respondent then contends the trial court's findings of fact do not support its conclusion of law that she willfully failed to make reasonable progress.

¶ 12     A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2021).

> "We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' " *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)); *see also* N.C.G.S. § 7B-1109(f) (2019). Unchallenged findings are deemed to be supported by the evidence and are "binding on appeal." *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019). "Moreover, we review only those [challenged] findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019).

*In re L.M.M.*, 2021-NCSC-153, ¶ 10 (quoting *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 737–38 (2020) (alteration in original)). The trial court's supported findings are "deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019).

¶ 13     Here the trial court concluded that a ground existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(2). A trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2).

Termination under this ground requires the trial court to

perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020). A parent's reasonable progress "is evaluated for the duration leading up to the hearing on the . . . petition to terminate parental rights." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (quoting *In re A.C.F.*, 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006)).

> [A] respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress . . . sufficient to warrant termination of parental rights under section 7B-1111(a)(2).
>
> [P]arental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2).

*Id.* (citations and quotation marks omitted) (alterations in original).

¶ 14    In its order concluding grounds existed to terminate respondent's parental rights as to Larry, the trial court made the following findings of fact:

> 21.    That [DSS] assumed non-secure[ ] custody on February 15, 2018 . . . .
>
>        . . . .
>
> 23.    That the minor child . . . was adjudicated to be a neglected juvenile on October 18, 2018 via a stipulation that he did not receive proper care,

supervision or environment from his parents or custodians, and lived in an environment injurious to his welfare . . . .

. . . .

25.  That the initial Family Services Case Plan for [respondent] found that the issues that needed to be addressed were substance abuse and recommended treatment, appropriate supervision and discipline, including parenting classes, establishing a stable home and employment, cooperating with [DSS], and maintaining contact with [DSS] at least once per week, and visiting the juvenile a[nd] supporting [the] placement of the juvenile.

26.  That during the pendency of this case [respondent] failed to make substantial progress on [her] Family Services Case Plan.

. . . .

28.  That [the] [o]rder from the January 10, 2019 [review hearing] released [DSS] of reasonable efforts towards the reunification with [respondent] due to [her] noncompliance with [her] Family Services Case Plan, and continuing to test positive for controlled substances.

29.  That on January 4, 2019 [respondent] tested positive for cocaine.

30.  That on January 10, 2019 [respondent] was not employed, did not have stable housing, and has gone to very few parenting classes.

. . . .

33.  That the [c]ourt, on January 10, 2019 found that due to the very serious and life-threatening injuries sustained by the juvenile's younger sibling [Lisa,]

which were injuries no[t] the result of an accident, in addition to the parents' failure to address the issues which led to removal, including the birth of a drug positive infant in 2018, that further reunification efforts would be futile and inconsistent with the juvenile's health, safety and need for a safe and permanent home within a reasonable period of time, and it would be in the best interest of the juvenile for [DSS] to be relieved of further reunification efforts and proceed with a permanent plan for the juvenile.

. . . .

35.  That [respondent] over the pendency of this matter has continuously used controlled substances for which she does not have a prescription and has given birth to two controlled[-]substances[-]positive children during the pendency of this matter.

. . . .

40.  That [respondent] ha[s] only sporadically made contact with [DSS] to check on the status or welfare of [her] minor child.

. . . .

43.  That the minor child has been out of the home for more than 32 months at the time of this hearing.

Then, in a section titled "Ultimate Findings of Fact," the trial court found the following:

2.  That . . . [respondent] ha[s] made no attempts to correct any conditions that led to the removal.

3.  That [respondent] did not timely participate in substance abuse treatment, did not find suitable housing, and did not find suitable employment.

4.      That [respondent] d[oes] not provide care or sustenance for [her] minor child, and ha[s] not visited on a regular basis.

5.      That [respondent] did not make inquiries on [her] minor child on a consistent basis. And ha[s] not made regular contact with [DSS] to determine which actions [she] needed to take to regain custody of [her] minor child.

6.      That [respondent] . . . has made little to no efforts to correct the conditions that led to the removal of her child, and has made no contact with [DSS] to ascertain what she must do to correct those conditions, and has made no regular visits with her child.

. . . .

8.      That [respondent] ha[s] willfully left the juvenile, [Larry,] in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.

¶ 15      The trial court entered a separate order concluding that grounds existed to terminate respondent's parental rights to Amy. Many of the trial court's findings in that order are identical to those in the order terminating respondent's rights to Larry. The following are the findings of fact in the order regarding Amy that differ from those in the order regarding Larry:

21.     That [DSS] assumed non-secure[ ] custody on October 9, 2018 because [DSS] received a report on October 8, 2018 regarding the juvenile. The juvenile was born on October 7, 2018, and tested positive for cocaine. [Respondent] tested positive for cocaine and

methadone at the time of the juvenile's birth.

22. That [respondent] admitted that she had used cocaine two days before she gave birth to [Amy].

23. That [DSS] had recent child protective services history in that three of the juvenile's siblings were currently in foster care due to the physical abuse of an infant child, substance abuse, and mental health concerns. [Respondent] has not been compliant with meeting the needs identified on her Family Services Case Plan and continued to test positive for illegal substances.

. . . .

25. That the minor child, [Amy,] was adjudicated to be a neglected juvenile on October 10, 2019 via a stipulation that she lived in an environment injurious to her welfare . . . .

26. That [respondent] does not have stable housing, and gave birth to another cocaine-positive infant in October 2019.

. . . .

44. That the minor child has been out of the home for more than 24 months at the time of this hearing.

. . . .

47. That the mother attended Black Mountain Recovery Center in 2019, and left said program early without sufficient explanation.

48. That [respondent] ha[s] failed to provide any form of substantial support for the minor child.

49. That [respondent] and [the] father still have an active relationship.

. . . .

51.	That [respondent] indicated that she would consume controlled substances as a way of coping.

¶ 16	Respondent argues that several findings of fact are unsupported by the evidence. Respondent contests finding of fact 47 in Amy's order, which states that she "attended Black Mountain Recovery Center in 2019, and left said program early without sufficient explanation." She asserts this finding is contrary to the court's own findings in its 24 June 2019 permanency planning order. In that order the trial court found that respondent "completed the Black Mountain inpatient substance abuse treatment center . . . program on May 3, 2019" and that "[s]he completed the program early as she [was] pregnant." Robbie Lowery, a foster care supervisor at DSS, testified that respondent stayed at Black Mountain for less than ninety days and left early "due to her pregnancy, but they let her leave and didn't have any concerns." Respondent also testified that she left Black Mountain early because she was pregnant. Accordingly, we disregard the portion of finding of fact 47 stating that respondent left the "[Black Mountain] program early without sufficient explanation." *See In re N.G.*, 374 N.C. 891, 901, 845 S.E.2d 16, 24 (2020) (disregarding findings not supported by the evidence).

¶ 17	Respondent also challenges finding of fact 49 in Amy's order, which states that she and the father "still have an active relationship." Respondent contends that because she last saw the father in October of 2019, she did not have an active

relationship with him at the time of the hearing. Amy was born on 7 October 2018 as a result of respondent's ongoing relationship with the father. In its review order filed on 24 June 2019, the trial court found that respondent "maintains a relationship with the . . . father as she spent the Memorial Day Weekend with him at a hotel in Myrtle Beach, South Carolina." On 9 October 2019, respondent gave birth to Alex, whose father is the same as Larry's and Amy's. Accordingly, substantial evidence supported the finding that respondent maintained an active relationship with the father.

¶ 18 Respondent next challenges the findings that she "had not been in regular contact with [DSS]." Respondent contends that the findings are unsupported but also suggests it was "unreasonable" for her to continue contacting DSS because she already knew the contents of her case plan; one of the social workers was not responsive to her calls; and once reunification efforts were ceased, DSS said it would not "hold [her] hand." Regardless of these arguments, respondent's case plan required her to "cooperat[e] with [DSS]" and to "maintain[ ] contact with [DSS] at least once per week." After respondent was released from the Black Mountain program in May of 2019, she did not contact DSS. Moreover, one of the social workers, Laura Gardner, testified that from August of 2019 until July of 2020, the period when she was assigned to the family, respondent never contacted DSS. Robbie Lowery testified that from July of 2020 onward, respondent did not call DSS to inquire about the welfare of her children. In her own testimony, respondent admitted she did not stay in regular

contact with DSS. Thus, substantial evidence supports these findings.

¶ 19        Respondent also contends that the trial court's findings related to her case plan progress "are wholly unsupported by the other findings and the evidence." The trial court found that respondent "failed to make substantial progress," "made no attempts to correct any conditions that led to the removal," and "did not timely participate in substance abuse treatment, did not find suitable housing, and did not find suitable employment." Respondent contends, however, that her actions in the spring and summer of 2020—specifically, completing another substance abuse treatment program, obtaining a job, and securing a two-bedroom apartment—indicate that she made reasonable progress on her case plan.

¶ 20        In so doing, respondent erroneously relies in part on evidence presented at the disposition stage of the proceeding. *See In re Z.J.W.*, 376 N.C. 760, 2021-NCSC-13, ¶ 17 (holding that the trial court erroneously "relied upon . . . dispositional evidence as support for its adjudicatory finding"). Moreover, respondent relies on her own testimony at the adjudicatory stage detailing her progress in the spring and summer of 2020. Robbie Lowery, however, testified respondent had not followed through on any of her case plan requirements and never presented proof of employment. Laura Gardner testified that respondent did not attempt to show she was addressing her substance abuse issues and made no requests for DSS to inspect a new residence. Although respondent informed Laura Gardner in April 2020 that she was employed,

had entered another rehabilitation program, and was expected to graduate in June 2020, respondent never provided evidence of her employment or completion of the rehabilitation program. The trial court weighed this competing evidence and found the testimony from DSS staff to be more credible than respondent's testimony. *See In re C.A.H.*, 375 N.C. 750, 759, 850 S.E.2d 921, 927 (2020) (noting that the trial court, given its unique position, is the proper entity to make credibility determinations). Accordingly, we conclude that the findings that respondent did not make progress on her case plan are supported by the evidence.

¶ 21 The trial court's findings of fact support its conclusion that respondent's parental rights were subject to termination based on N.C.G.S. § 7B-1111(a)(2). Larry was removed from respondent's care on or about 7 February 2018. Amy was removed from respondent's care on or about 9 October 2018. Both children had remained continuously in their placements outside of respondent's care when the termination of parental rights petitions were filed on 24 January 2020. Thus, both children were in a placement outside respondent's care for more than twelve months preceding the filing of the petitions.

¶ 22 Moreover, the evidence showed that respondent exhibited a prolonged inability to improve her situation. Larry was originally removed from respondent's care because the father abused Lisa. Nonetheless, respondent continuously maintained a relationship with the father throughout these proceedings. Moreover, respondent did

not improve her substance abuse. From March until July of 2018, respondent repeatedly either tested positive for controlled substances or refused drug screens. Then on 7 October 2018, Amy tested positive for cocaine when she was born, and respondent admitted to using cocaine two days before the birth. Respondent tested positive for cocaine again on 4 January 2019. The trial court ceased efforts toward reunification with respondent in part because respondent "continue[d] to test positive for illegal substances." Although respondent completed the Black Mountain treatment program in May of 2019, her last child, born in October of 2019, also tested positive for cocaine at birth. Respondent "was not employed, did not have stable housing, and ha[d] gone to very few parenting classes." Respondent also consistently failed to cooperate and remain in contact with DSS. Thus, the trial court's findings of fact support its conclusion of law that respondent willfully left the children in a placement outside the home and failed to make reasonable progress. Accordingly, the trial court properly terminated respondent's parental rights under N.C.G.S. § 7B-1111(a)(2).

¶ 23      Respondent also argues the trial court erred in terminating her parental rights under N.C.G.S. §§ 7B-1111(a)(1) and (7). Because we conclude the trial court properly terminated respondent's parental rights based on N.C.G.S. § 7B-1111(a)(2), we do not address respondent's remaining arguments. *See In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982) (stating that an appealed order should be affirmed when any

one of the grounds found by the trial court is supported by findings of fact based on clear, cogent, and convincing evidence); *see also* N.C.G.S. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]"). Thus, we affirm the trial court's orders.

AFFIRMED.